Michael **CRAIGHEAD**, M.D.,
et al., Appellants,

v.

**CITY OF JEFFERSON**, Missouri,
et al., Respondents.

No. 77360.

Supreme Court of Missouri,
En Banc.

May 30, 1995.

Rehearing Denied June 20, 1995.

---

Erwin L. Milne, Victor S. Scott, Jefferson City, for appellants.

J. Kent Lowry, Christopher P. Rackers, Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Ronald Molteni, Asst. Attys. Gen., Jefferson City, for respondents.

PRICE, Judge.

This lawsuit arises out of the refusal of the City of Jefferson to approve seven (7) initiative petitions for circulation. In various forms, the petitions seek to resubmit to the people the question of whether riverboat gambling should be allowed in Jefferson City. The circuit court granted summary judgment in favor of the city. We hold that the city charter allows review and approval of initiative petitions prior to their circulation only as to form; that § 313.812.10 does not preclude a second local option election following a prior affirmative election; and that all other issues involved are not ripe for judicial review. We further hold that the city erred in refusing to certify one petition. Accordingly, we reverse and remand.

I.

On November 3, 1992, the people of Missouri approved by referendum House Bill (H.B.) No. 149 authorizing riverboat gambling, subject to local approval. Also on November 3, 1992, the people of Jefferson City passed the following question: "Shall the City of Jefferson allow the licensing of excursion gambling boats in the city?", by a vote of 10,347, yes, and 6,931, no.

On April 28, 1993, the General Assembly enacted Senate Bill (S.B.) Nos. 10 and 11 repealing portions of H.B. No. 149 and enacting in lieu thereof certain other provisions. In turn, the General Assembly thereafter enacted S.B. No. 740 repealing certain portions of S.B. Nos. 10 and 11, and enacting in lieu thereof certain other provisions. One of the changes in the laws was that gambling boats were no longer required to cruise the

rivers, but could be permanently docked. S.B. No. 740 also included a provision stating:

[t]hose cities and counties which have approved by election pursuant to this subsection, except those cities or counties which have subsequently rejected by election the licensing of any type of excursion gambling boats in the city or county prior to April 6, 1994, are exempt from any local election requirements of this section as such previous election shall have the same effect as if held after the effective date of this section, ...

*Section 313.812.10.*

Between April 15, 1993 and May 18, 1994, certain residents of Jefferson City submitted seven (7) different initiative petitions seeking to have the issue of whether riverboat gambling should be allowed in Jefferson City revoted by the citizens. The petitions were submitted to the city for approval pursuant to Article IX, Section 9.3 of the Charter of the City of Jefferson, Missouri (city charter), which reads:

Prior to circulation, petitions must be submitted *for approval as to form* by both the clerk and city counselor. They shall approve or disapprove any petition within ten days following its submission. If approved the clerk is responsible for preparing ballot language which must be in question form and approved by the counselor. If disapproved the clerk and counselor shall provide an itemized list of needed corrections at the time of issuance of the disapproval.

(Emphasis supplied.) Within the time allowed, the city counselor refused to approve each of the petitions.

The city counselor objected to various issues of form individual to each particular petition. However, the city counselor also objected to all of the petitions on substantive grounds. Generally, the city counselor took the position that once the city voters had approved of riverboat gambling by referendum election, any subsequent vote was preempted by state law.

On July 5, 1994, three residents of Jefferson City, Dr. Michael Craighead, Dr. John

Matthews, and Mr. Morris Trout, filed suit in the Circuit Court of Cole County against the City of Jefferson, B. Allen Gardner as city counselor, and Phyllis Powell as city clerk. The lawsuit sought a declaration that § 313.812 was unconstitutional and a mandatory injunction directing the defendants to approve any one of the petitions and various other forms of relief. Of the plaintiffs, only Dr. Craighead was a signatory of any of the petitions and he signed only the two petitions filed April 15, 1993, and February 21, 1994. The Attorney General intervened on behalf of the State of Missouri.

On September 12, 1994, the circuit court entered judgment on the pleadings against the plaintiffs. Plaintiffs appealed directly to this Court. We have jurisdiction pursuant to Mo. Const. art. V, § 3.

## II.

Our focus in this case is controlled by Art. IX of the city charter. Art. IX basically provides a six-step procedure for an ordinance to be passed by initiative petition. First, any five qualified voters may file an affidavit with the city clerk indicating that they constitute a petitioners' committee. They must also set out in full the proposed initiative ordinance. (Art. IX, § 9.2.)

Second, the clerk and the city counselor shall approve or disapprove the form of the proposed petition, within ten days. If the form is approved, the clerk is responsible for preparing the actual ballot language in question form. If disapproved, the clerk and the city counselor must provide an itemized list of needed corrections. (Art. IX, § 9.3.)

Third, the petitioners must obtain signatures of voters equal in number to twenty (20) percent of the number of votes cast for mayor in the last election, or not less than four hundred qualified voters. (Art. IX, § 9.4.)

Fourth, within twenty (20) days after the completed petition is filed, the clerk must certify that the petition is complete, or specify its defects. (Art. IX, § 9.5.)

Fifth, the city council must promptly consider sufficient initiative petitions. If the city council fails to adopt the proposed ordinance within sixty (60) days, the proposed ordinance must be submitted to the voters of the city, within not less than thirty (30) days and not more than one year. (Art. IX, § 9.7.)

Finally, if the initiative proposal receives approval of a majority of those voting, it becomes effective as any other city ordinance. (Art. IX, § 9.8.)

The present controversy centers on the second step in this process. The city clerk and the city counselor have refused to approve the form of the petitions sought to be circulated. While the city counselor identified a number of defects as to form, his primary objection to the petitions was one of substantive law. He stated that any subsequent vote regarding approval of riverboat gambling in Jefferson City was preempted by state law.

■ The charter does not contemplate that the city may preclude its voters from pursuing the initiative process of legislation by its interpretation of unsettled issues of substantive law. Art. IX, § 9.3 provides only that the city clerk and the city counselor may approve or disapprove any petition submitted to them "as to form". Moreover, the requirement that the petitioners be provided with a list of "needed corrections" indicates the intent of the charter that the approval process be used to aid the petitioners in placing matters before the voters, not to permanently frustrate them.

■ Certainly the various issues of law raised by the city are not so clear or settled as to constitute matters of form. Section 313.812.10 provides, in pertinent part:

No license to conduct gambling games on an excursion gambling boat in a city or county shall be issued unless and until the qualified voters of the city or county approve such activities pursuant to this subsection.... If a majority of the votes cast on the question by the qualified voters voting thereon are opposed to the question, then the commission shall not license such excursion gambling boats in such city or county unless and until the question is again submitted to and approved by a majority of the qualified voters of the city or

county at a later election.... Those cities and counties which have approved by election pursuant to this subsection, except those cities or counties which have subsequently rejected by election, the licensing of any type of excursion gambling boats in the city or county prior to April 6, 1994, are exempt from any local election requirement of this section as such previous election shall have the same effect as if held after May 20, 1994.

The section does not expressly or implicitly prohibit a second local option election on riverboat gambling after a prior affirmative election. Moreover, the recognition in this part of the statute that second elections to rescind local approval may have already occurred following prior affirmative elections is implied authority for such elections, thereafter. While the city counselor's determination that a second vote was prohibited raised complicated issues of law as to the *effect* of a subsequent election on the authority of the Missouri Gaming Commission to license gambling, that determination was simply beyond the scope of the review granted to the city clerk and the city counselor by the city charter.

### III.

Hence, the core issue for us to address is whether the initiative petitions were all properly rejected as to form pursuant to Article IX, § 9.3 of the Charter of the City of Jefferson.

■ The first petition submitted April 15, 1993, reads:

### INITIATIVE PETITION TO PREVENT RIVERBOAT GAMBLING

AN ORDINANCE OF THE CITY OF JEFFERSON, MISSOURI, PROHIBITING RIVERBOAT GAMBLING IN THE CITY OF JEFFERSON.

BE IT ENACTED AS FOLLOWS:

*Section 1.* Notwithstanding any other ordinances of the city to the contrary, no riverboat gambling shall be allowed in the City of Jefferson.[1]

By letter dated April 23, 1993, the city counselor cited only one objection as to this petition's form. He noted that the affidavit accompanying the petition should be notarized. This was characterized as a "minor defect and would be treated as correctable", but for the substantive issue which we have discussed above. Because the city cannot validly refuse this petition on the proposed substantive issue, only the correctable lack of notarization remains. Accordingly, this petition should have been approved subject to the correction of this "minor defect". As Dr. Craighead was a signatory of this petition, no standing issue exists.

Plaintiffs below sought only that the city clerk and the city counselor be ordered to certify any one of their petitions for circulation. As we have found that the petition submitted April 15, 1993, should be certified subject to proper notarization, we need not address the form of any of the other petitions, nor the issue of the standing of the plaintiffs herein to bring suit concerning the refusal by defendants to approve the other petitions for circulation. Of course, petitioners are free to abandon this petition and to use other language so long as it is of proper form under Art. IX of the city charter.

### IV.

■ The parties hereto have raised various other substantive and constitutional issues. Although posed in different ways, they seek a declaration as to the effect of any second local option election if it is contrary to the first. Specifically, will the Missouri Gaming Commission be precluded from licensing riverboat gambling in Jefferson City? This issue, however, is dependent upon the language of a ballot initiative not yet finalized, the outcome of an election not

---

1. At a local option election under § 313.812.10, the "question shall be submitted in substantially the following form:
    Shall the City (County) of ...... allow the licensing of excursion gambling boats or float-ing facilities as now or hereafter provided by Missouri gaming law in the city (county)?"
The Court expresses no opinion as to what language might be used in a second election under § 313.812.10.

yet held, and the facts and circumstances of various other parties who are not in this lawsuit.

In *Local Union 1287 v. Kansas City Area Transportation Authority,* 848 S.W.2d 462, 463 (Mo. banc 1993), we clearly stated:

It is premature to render a judgment or opinion on a situation that may never occur. *Kirkwood Drug Co. v. City of Kirkwood,* 387 S.W.2d 550, 555 (Mo.1965). A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose. The question presented must be ready for judicial decision. If it is not, the judgment is a nullity. *See State ex rel. Chilcutt v. Thatch,* 359 Mo. 122, 221 S.W.2d 172, 176 (banc, 1949).

We will not rush to review the possible legal effect of such matters so prematurely.

## V.

The case is reversed and remanded to the Circuit Court of Cole County with instructions to order the Jefferson City Counselor and the Jefferson City Clerk to certify for circulation the petition submitted April 15, 1993, pursuant to Article IX, Section 9.3 of the Charter of the City of Jefferson, Missouri, subject only to the petition's proper notarization. Section 313.812.10 does not preclude a subsequent local option election after a prior affirmative election. The effect of such an election, however, is not ripe for review.

HOLSTEIN, THOMAS, LIMBAUGH and ROBERTSON, JJ., concur.

COVINGTON, C.J., concurs in part and dissents in part in separate opinion filed.

BENTON, J., not sitting.

COVINGTON, Chief Justice, concurring in part and dissenting in part.

I cannot join the last paragraph of part II of the principal opinion. The issue of whether § 313.812.10 allows a subsequent local option election is not ripe. It remains to be seen whether appellants will circulate the petition after remand from this Court, whether the petition will receive sufficient signatures, indeed whether the issues will ever come to a vote. Furthermore, as the majority notes, the city clerk and city counsellor lack authority under the charter to construe or apply § 313.812.10; they are empowered to review petitions only as to form. They are not, therefore, proper defendants in a declaratory judgment action seeking a construction of the statute. The majority should refrain from addressing the issue.

Accordingly, I concur in part and dissent in part.