**STATE of Missouri, ex rel. HAZELWOOD YELLOW RIBBON COMMITTEE, et al., Appellants,**

v.

**Colleen KLOS City Clerk for the City of Hazelwood, Respondent,**

and

**Tristar Business Communities, LLC, and certain RPA I and II Residents, Intervening Respondents.**

No. ED 77319.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 14, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 2001.

Application for Transfer Denied Feb. 13, 2001.

Julie H. Hurwitz, Mark P. Fancher, Detroit, MI, Robert Herman, Schwartz, Herman & Davison, St. Louis, for appellant.

Kevin M. O'Keefe, Paul E. Martin, Curtis, Oetting, Heinz, Garrett & Soule, P.C., St. Louis, for respondent.

Jay L. Levitch, H. Kent Munson, The Stolar Partnership, St. Louis, for intervenor.

TEITELMAN, Judge.

This case arises from Appellants' opposition to a Tax Increment Financing ("TIF") project within the City of Hazelwood. Appellants filed several TIF-related initiative and referendum petitions with the City, which the City Clerk refused to certify. Appellants then filed suit seeking to compel the Clerk to certify and place on the ballot at a duly conducted municipal election their initiative and referendum proposals. The Circuit Court granted a preliminary writ of mandamus but subsequently quashed the writ and dismissed Appellants' suit, finding that the ordinance repeal proposals lacked a sufficient number of voter signatures and that the proposed amendments to the City Charter were facially unconstitutional. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Appellant Hazelwood Yellow Ribbon Committee ("HYRC") is an association of approximately fifty citizens of Hazelwood, Missouri. It was organized in the late summer of 1998 for the purpose of opposing a proposed $17 million TIF tax subsidy to a private corporation to develop an industrial park in an area of Hazelwood, including farmland and wetlands, known as the "Missouri Bottom Road Area." HYRC also sought to amend Hazelwood's City Charter to require a two-thirds majority vote of registered Hazelwood voters to approve any future TIF plans, and to strip the City of any power of eminent domain with respect to TIF plans or projects. Leon Steinbach and the other individually named Appellants are all residents of, and/or taxpayers in, the City of Hazelwood. Respondent Collen Klos is the Clerk for the City of Hazelwood, a charter city organized pursuant to article VI, § 19 of the Missouri Constitution and located

within St. Louis County. Respondent/Intervenor Tristar Business Communities, LLC ("Tristar") is the City's chosen developer for the Missouri Bottom Road Area TIF project. Several individual Respondent/Intervenors ("the RPA Intervenors") consist of Hazelwood residents who own property in the Bottom Road Area.

### B. TIF Development in Hazelwood

In January of 1998 the City of Hazelwood, acting pursuant to the MISSOURI REAL PROPERTY TAX INCREMENT ALLOCATION REDEVELOPMENT ACT (section 99.800 et seq., RSMo 1994 [1]) (the "TIF Act"), established by ordinance a commission (the Hazelwood Tax Increment Financing Commission) to consider and recommend possible redevelopment projects within the City utilizing tax increment financing. In October of that year the Commission prepared and made public its Redevelopment Plan for the Bottom Road Area, proposing that the area be designated a "TIF Redevelopment Area" and that approximately 696 acres within the area be developed for industrial and commercial use. As necessary conditions precedent to the designation of the Bottom road Area as a TIF Redevelopment Area, the area was identified by the Commission as a "Blighted Area" under section 99.805(2) and a "Conservation Area" under section 99.805(3).[2] On November 18, 1998, at a Hazelwood City Council meeting, a proposed ordinance officially designating the Bottom Road Area as a TIF Redevelopment Area, and approving a Redevelopment Plan and making the necessary findings of fact and authorizing the execution of necessary documents attendant thereto, was read for the first time. At the same meeting a separate proposed ordinance, adopting TIF financing for the proposed Bottom Road Area Redevelopment Plan, was also read for the first time. On December 16, 1998, the Hazelwood City Council unanimously adopted both ordinances—Ordinance 3020–98, which approved the Missouri Bottom Road Area TIF Redevelopment project, and Ordinance 3021–98, which adopted tax increment financing for the project. Under the plan adopted by these ordinances pursuant to the TIF Act, Hazelwood will issue TIF bonds in the amount of approximately $17 million, from which the proceeds will be used to finance various aspects of Tristar's development of the Bottom Road Area. All increased property tax revenues realized by the redevelopment of the Bottom Road Area, and fifty percent (50%) of all additional municipal and/or other tax revenues generated by economic activities within the project area, will be diverted from the general tax coffers from which municipal and public services are normally funded, and will instead be used to retire the TIF bonds issued by Hazelwood to Tristar.

### C. Appellants' Referendum and Charter Amendment Petition Drives

On November 18, 1998, Appellants began circulating an initiative petition calling for the submission to Hazelwood voters of the following two proposed substantive amendments to the City's Charter:

a. That the City of Hazelwood's power of eminent domain incident to the adoption and implementation of any TIF Redevelopment Plan or Project be completely abrogated; and

b. That the adoption and approval of any TIF Redevelopment Project or Plan by the City of Hazelwood require the favorable vote of two-thirds (⅔) of the voters in a duly conducted Hazelwood election.

---

1. All further statutory references are to RSMo 1994 unless otherwise noted.

2. Appellants maintain that the area is neither; that it has been and remains a largely residential and agricultural area; and that it also is home to an ecologically important wetlands system along the Missouri River that would be destroyed by the proposed TIF development.

(the "Charter Amendment Petition").[3]

Appellants delivered the Charter Amendment Petition to Ms. Klos on December 16, 1998. The Petition contained nearly 4,000 signatures; the parties do not dispute that the number of signatures of qualified registered Hazelwood voters was significantly greater than the 10% required by Article XII, § 16 of the Charter.[4]

On December 17, 1998, Appellants began the circulation of two new and separate referendum petitions, one seeking to repeal Hazelwood City Ordinance 3020–98, and the other to repeal Ordinance 3021–98 (collectively, the "TIF Referendum Petitions"). On January 5, 1999, Appellants delivered the TIF Referendum Petitions to Ms. Klos.

### D. Respondent Klos's Rejection of Charter Amendment Petition

In a memorandum dated January 6, 1999 and mailed to Appellants the following day, Respondent Klos rejected the Charter Amendment Petition as insufficient. Though admitting the Petition had the requisite number of signatures, Ms. Klos concluded in her memorandum that the Petition was invalid on several grounds, including, among others: that the attached statements by circulators were deficient; that the Petition was improper as to form under sections 115.700 and 115.019; and that the proposed Charter Amendments were in violation of Article VI, § 19(a) of the Missouri Constitution in that they directly conflicted with existing state statutes. On January 21 and 22, 1999, Appellants delivered an Amended Charter Amendment petition to Respondent Klos, in an attempt to address some of the alleged insufficiencies. By a separate memorandum dated February 3, 1999, which essentially restated the bases for denial as set forth in her January 6th memorandum, Ms. Klos also rejected the Amended Charter Amendment Petition as insufficient.[5]

### E. Respondent Klos's Rejection of TIF Referendum Petitions

On January 5, 1999, Appellants delivered to Ms. Klos the two referendum petitions, one seeking repeal of Ordinance 3020–98 and the other seeking repeal of 3021–98, within twenty days after enactment of those ordinances. By memorandum dated January 6, 1999 and postmarked the following day, Respondent Klos rejected both petitions as insufficient, citing among other grounds failure to contain an adequate number of signatures. On January 21 and 22, 1999, Appellants, delivered to Ms. Klos their Amended TIF Referendum Petitions. By memorandum dated February 17, 1999, Ms. Klos rejected the Amended TIF Referendum Petitions as insufficient. The February 17th memorandum cited numerous grounds for

3. The Charter Amendment Petition actually contained three separate amendments; however, two of them combined together (Amendments One and Two) comprised the eminent domain proposal, while Amendment Three constituted the ⅔ voter approval proposal.

4. The reason only 10% of qualified voters are required for a charter amendment petition, even though a city Charter requires a greater percentage with respect to a petition calling for passage or repeal of an ordinance, is that the 10% figure required for a charter amendment is written into the Missouri Constitution, at Article VI, § 20. Article XII, § 16 of the Hazelwood City Charter reads word-for-word the same as that provision of our Constitution.

5. Ms. Klos's February 3rd memo added two new bases for denial: (1) that the January 22nd submission of the Amended Charter Amendment Petition was one day late under the applicable 15–day time limit after her mailing of the January 6th rejection memorandum, and that the corrections to the circulators' statements were attached to photocopies to the original signed petitions rather than to the originals themselves. For reasons for which we need not elaborate, the record shows that neither of these additional asserted grounds for denial had merit. Respondents have chosen not to press them in this appeal.

rejection; the primary grounds relied upon, however, were: (1) that each of the two Petitions, even in their "amended" form, still contained an insufficient number of qualified registered voter signatures; and (2) that a referendum vote challenging either of the two ordinances in question was directly prohibited by the TIF Act and would thus be a violation of Article VI, § 19(a) of the Missouri Constitution.

### F. The Mandamus Action

On July 22, 1999, Appellants filed their Petition for Writ of Mandamus in the Circuit Court of St. Louis County, seeking to compel Respondent Klos: (1) to certify as sufficient the Charter Amendment Petition and place the questions presented therein on the ballot at a municipal election; or (2) to certify and place on the ballot the Amended Charter Amendment Petition; and (3) to certify and place on the ballot each of the two *Amended* TIF Referendum Petitions.[6] The judge to whom the case was assigned immediately issued a preliminary writ of mandamus. Tristar later filed a motion to intervene as of right under Rule 52.12(a), as did the RPA Residents. Both motions were granted by the court, over Appellants' opposition. Respondent Klos and the intervenors filed separate motions to dismiss the mandamus petition. Appellants filed their memorandum in opposition to the motions to dismiss on November 16, 1999, and the court heard oral argument on the motions two days later. On December 1, 1999, the court entered its judgment and order dismissing Appellants' mandamus petition and quashing its preliminary writ. This appeal follows.

### DISCUSSION

### A. Appellate Jurisdiction

 Regardless of whether the litigants themselves raise the issue, an appellate court has a duty to determine whether a final appealable judgment has been reached and to dismiss the appeal *sua sponte* if it finds that no such judgment was rendered. *Coonis v.. Rogers,* 413 S.W.2d 310, 313 (Mo.App.1967). In the case at bar, even though the parties themselves did not discuss them in their briefs or at oral argument before this court, there are two questions we must address in order to determine whether there is a final judgment.

### (1) Were All The Claims Resolved?

 Under Rule 74.01(b), unless the trial court makes an express determination that there is no just reason for delay, a judgment can be appealed only if it "disposes of all issues in the case.... If multiple claims are asserted and the court does not adjudicate all claims, the judgment is not final." *State ex rel. Sullivan v. Roberts,* 948 S.W.2d 709, 709 (Mo.App. E.D. 1997); see also *Kunda v.. Roark,* 996 S.W.2d 159, 161 (Mo.App. S.D.1999). As previously noted, the Charter Amendment Petition submitted by Appellants in the instant case contained in substance two separate and distinct (though closely related) proposed amendments: one which would require the approval of two-thirds (⅔) of the Hazelwood voters at a duly conducted municipal election for the adoption of any future TIF plan or project; and the other which would eliminate the City's power of eminent domain with respect to TIF projects. While specifically finding in its judgment that the ⅔ voter approval proposal was unlawful, the trial court did not explicitly rule on the eminent domain proposal. Though an argument perhaps could be made that the separate proposals combined in the Charter Amendment Petition constituted but a single "claim" for relief (thus resulting in a final appealable judgment if the trial court found only one of them to be invalid), we conclude the sounder and correct view is that the emi-

---

**6.** As the record shows and Appellants candidly concede, they have never alleged that either of the *original* TIF Referendum Petitions, seeking repeal of Ordinances 3020–98 and 3021–98, ever had the required number of qualified voter signatures.

nent domain proposal and the ⅔ voter approval proposal each constituted a separate "claim" for relief, for purposes of Rule 74.01(b). This is especially true given that the petition requested that each proposal be voted on separately (so that, in theory at least, the voters could choose to approve one but disapprove the other)[7] and because the legality of each depends upon the application of somewhat distinguishable principles of law. See *Committee For Educational Equality v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994).

Thus, if the trial court did not resolve the issue as to whether the Charter Amendment Petition's eminent domain proposal could validly be certified and put on the ballot, then there is not yet a final judgment in this case. We conclude, however, that the court's judgment *implicitly* held that the eminent domain proposal was in conflict with the TIF Act and thus necessarily unconstitutional under Article VI, § 19(a). Given our examination of the record, the transcript of the oral argument held on Respondents' motions to dismiss, and the pre-argument written briefs filed with the trial court by all parties, we find that no other reasonable conclusion can be reached regarding the meaning of the portion of the court's judgment which reads: "The Court also notes for the parties the provisions of Sec. 99.805 through Sec. 99.865 RSMo., which control." Therefore, since the trial court's judgment implicitly resolved Appellants' claim concerning their eminent domain proposal even though making no explicit reference to it, there is a final judgment. *State ex rel. Nixon v. Hoester*, 930 S.W.2d 52,53 (Mo.App. E.D. 1996); *City of Hannibal v. Marion County*, 745 S.W.2d 842, 844 (Mo.App. E.D. 1988).

### (2) *Is The Dismissal Without Prejudice Appealable?*

▮▮▮ Rule 67.03 states, in pertinent part: "Any involuntary dismissal shall be without prejudice unless the court in its order of dismissal shall otherwise specify." Here the judgment did not specify whether the dismissal was with prejudice. Thus, under Rule 67.03, it must be deemed without prejudice. The general rule is that "a dismissal without prejudice is not a final judgment" and therefore not appealable. *Waltrip v. Davis*, 899 S.W.2d 147, 148 (Mo.App. E.D.1995). However, a dismissal "without prejudice" for failure to state a claim may be appealed if it effectively precludes the plaintiff from re-filing the same cause of action. *WEA Crestwood Plaza v. Flamers Charburgers*, 24 S.W.3d 1, 5 (Mo. App. E.D.2000). Here, the dismissal had such a preclusive effect. Additionally, when a circuit court issues preliminary writ but later quashes it after reaching the merits, such decision is a final appealable judgment. *State ex rel. Westfall v. Gerhard*, 676 S.W.2d 37, 38 (Mo. App. E.D. 1984). Thus, we have jurisdiction to hear this appeal.

### B. TIF Referendum Petitions

▮▮▮ A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). An appellate court reviews the granting of such a motion in the light most favorable to the plaintiff's claims, assumes all of the facts alleged in the pleading are true, construes those facts liberally in favor of the appellant, gives the appellant the benefit of every reasonable intendment favorable to his pleading, and judges the pleading with "broad indulgence." *Auto Alarm Supply v. Lou Fusz Motor*, 918 S.W.2d 390, 392 (Mo.App. E.D.1996). If a trial court granting a motion to dismiss reaches a correct result for the wrong reason, we must still affirm. *Southwestern Bell Tele-*

---

**7.** An initiative measure may embrace more than one proposition, provided they are related to the same subject. See 82 C.J.S. *Stat-* *utes,* section 116 (1999); 42 Am Jur 2d *Initiative and Referendum,* section 24 (1969).

*phone Co. v. Buie,* 689 S.W.2d 848, 851 (Mo.App. E.D.1985).

In their first point on appeal, which concerns Count III of their mandamus petition, Appellants claim the trial court erred in finding that their Amended TIF Petition seeking repeal of Ordinance 3020–98 ("Amended TIF Petition 3020–98") contained insufficient signatures and was thus invalid.[8] Applicable provisions of the Hazelwood City Charter require that a referendum petition seeking repeal of an ordinance must be signed by at least twenty per cent (20%) of the voters registered at the last municipal election to be certified and placed on the ballot. The St. Louis County Election Board determined that 14,944 qualified registered voters voted in the April 1998 Hazelwood municipal election; the parties did not dispute that a sufficient referendum petition would thus require approximately 2,989 signatures of registered voters. The trial court found that Amended TIF Petition 3020–98 lacked sufficient signatures because the record reflected that "the maximum number of signatures submitted" was 2,920. It is clear from the record that in making this finding, the court relied exclusively on the factual contentions related to the number of signatures that were stated in Respondent Klos's February 17, 1999 memorandum rejecting the Amended TIF Petitions, which was attached to Appellants' mandamus pleading as "Exhibit Q."

Appellants contend the court's finding was error because (1) their mandamus petition clearly pleaded that the Amended TIF Petitions each contained signatures of more than 20% of the qualified registered voters; and (2) even if the motions to dismiss were in effect considered as having been treated by the trial court as converted motions for summary judgment pursuant to Rule 55.27(b), the judgment was still improper because the

trial court ignored the sworn affidavit of Appellant Leon Steinbach, in which he stated that he personally compiled and submitted Amended TIF Petition 3020–98 and that it contained 3,104 signatures— more than the 2,989 signatures the trial court found to be necessary. Respondents counter by arguing that Appellants' pleaded allegations regarding sufficiency of signatures were "mere conclusions." Further, they contend, Appellants automatically converted the motions to dismiss into motions for summary judgment by attaching Mr. Steinbach's affidavit to their memorandum in opposition, but that affidavit was not enough to create a genuine issue of material fact because it merely assumed—without showing—that all of the additional signatures on the *Amended* TIF Petition 3020–98 (that is, those in addition to the signatures approved by the St. Louis Board of Election Commissioners on the *original* Petition) were from registered and qualified voters. Still further, they argue, Ms. Klos's February 17, 1999 memorandum "unequivocally established" that the Amended TIF Referendum Petition failed to have sufficient signatures since it was attached as an exhibit to Appellants' mandamus petition and therefore must be deemed "a part of the pleading for all purposes;" citing *HGS Homes, Inc. v. Kelly Residential Group, Inc.,* 948 S.W.2d 251, 255 (Mo.App. E.D. 1997) and Rule 55.12.

Respondents' arguments are not persuasive. The record is replete with references indicating that the parties and the court treated and considered the motions solely as motions to dismiss and not for summary judgment. Further, summary judgment would have been improper based on the required number of signatures relied upon by the trial court, since the Steinbach affidavit explained in detail the careful methods he used in an effort to

---

8. Appellants have chosen not to appeal the portion of the court's judgment denying them relief with respect to Amended TIF Petition 3021–98, in recognition of the fact that 3021– 98 is solely an appropriations ordinance and as such is expressly prohibited as a subject for referendum by Article X, § 2 of the Hazelwood City Charter.

obtain only valid signatures, and thus was enough to raise a genuine factual dispute as to whether there were sufficient signatures. The motions were properly treated as motions to dismiss. As such, the mere fact that Appellants' mandamus petition alleged that TIF Amended Petition 3020–98 "contained more than twenty (20%) percent of registered Hazelwood voters qualified to vote at the last municipal election," as opposed to alleging some specific total number of voters, did not render the pleading insufficient under our fact-pleading system or the standards governing a motion to dismiss, as the pleader is only required to state ultimate facts. *Sutton v. Sutton*, 567 S.W.2d 147, 148 (Mo.App. 1978). Likewise, although an attached exhibit is deemed part of a litigant's pleading "for all purposes," this does not mean that a plaintiff admits all factual statements contained in such an exhibit when it is clear from the petition itself that he is vigorously disputing certain of those statements, and when, as in this case, he has attached the exhibit merely to provide a more detailed factual account of the alleged denial of legal rights. See *Middleton v. Director of Revenue*, 992 S.W.2d 904, 907 (Mo.App. S.D.1999).

■■■ Thus, the Appellants' claim of error regarding Point I does have some legal merit. The claim might well require reversal and remand for an evidentiary hearing to determine the number and sufficiency of valid signatures, *if* the trial court were correct in its implicit underlying assumption that it is the number of signatures on the *Amended* TIF Referendum Petition 3020–98 which is legally relevant for purposes of determining numerical sufficiency. We conclude, however, that that assumption is incorrect. Rather, as Respondent Klos argued in her motion to dismiss before the trial court, it is only the number of signatures contained in the *original* TIF Referendum Petition 3020–98

which may validly be counted for this purpose.

Article X, § 2 of the Hazelwood City Charter states as follows:

**SEC. 2 REFERENDUM**

The people shall have the power known as referendum to approve or reject at the polls any Ordinance passed by the Council, or submitted by the Council to a vote of the people, except Ordinances appropriating money, authorizing the levy of taxes, calling an election, emergency Ordinances or issuing special tax bills. Within twenty (20) days after the passage of an Ordinance by the Council which is subject to referendum, a petition signed by the registered voters of the City equal in number to at least twenty (20) percent of the total registered voters qualified to vote at the last regular municipal election may be filed with the City Clerk requesting that such Ordinance be either repealed or submitted to a vote of the registered voters of the City.

The record in this case shows, and it is not disputed, that when Appellants submitted the *original* TIF Referendum Petition 3020–98 to Respondent Klos on January 5, 1999, the Petition was substantially short of the requisite number of signatures. It contained only 2,234 signatures according to Mr. Steinbach, the person who filed it with the Clerk's office—far less than the required 2,989 to meet the twenty percent (20%) threshold. As Appellants have candidly acknowledged, both in the trial court and in their brief on appeal, *they have never alleged* that the original TIF Referendum Petition 3020–98 contained a sufficient number of signatures. Appellants attempted to gather the additional needed signatures, relying on the assumption that the amendment period provided by Article X, § 6 of the Hazelwood City Charter entitled them to fifteen additional days in which to do so.[9]

9. Article X, § 6 of the Charter states:
 **SEC. 6 AMENDED PETITION**

An initiative, referendum or recall petition may be amended at any time within fifteen

■ That assumption is legally unsound. We agree with Respondent Klos that the option of amending a numerically insufficient petition by filing supplemental petition documents under Article X, § 6 of the City Charter is not available to correct the shortcomings of original petitions which plainly lack sufficient signatures. Article X, § 2 of the Charter mandates that referendum petitions be signed by registered voters equal in number to *"at least"* 20% of the registered voters at the last regular City election, and that this number of signatures must be filed *"within twenty (20) days"* after passage of the ordinance in question. (emphasis added) If the twenty-day time limit specified in Article X, § 2 is to have any real force or validity, the amendatory filing process contemplated by Article X, § 6 cannot be used to artificially expand the petition filing period. The amendment provisions of Article X, § 6 must be read and construed in harmony with the rest of the Charter sections; under such a construction the supplementation option would be available only for petitions which putatively had a sufficient number of signatures when they were originally filed.

■ In this case, however, as previously noted, the original TIF Referendum Petition 3020–98, which was filed on the 20th day after the ordinance's enactment, was far short of the required number of signatures and Appellants have never alleged otherwise. As a result, Appellants' mandamus petition failed to state a claim for relief on this issue. A referendum petition *must* contain the required number of qualified signers, at the time of filing, as specified in the governing constitutional or statutory provisions. 82 C.J.S. *Statutes,* sec. 119(c), pp. 161–162 (1999). If it does not,

then it is not entitled to be placed on the ballot. *Id.*

Appellants have argued that this is inconsistent with the general rule that provisions under which the people proceed in an initiative or referendum proceeding should be liberally construed. However, our courts have previously held that although that is indeed the general rule, the general rule must yield when it conflicts with the framers' intent and plain meaning of city charter provisions which place specific limits on the initiative and referendum process. See *State ex rel. Childress v. Anderson,* 865 S.W.2d 384, 387 (Mo.App. S.D.1993); *Friends of the City Market v. Old Town Redevelopment Corp.,* 714 S.W.2d 569, 573 (Mo.App. W.D.1986). Nor is our decision in conflict with the holding of *State ex rel. Voss v. Davis,* 418 S.W.2d 163, 166 (Mo.1967), which applies only to charter amendment provisions, and only when the local governing authority does not otherwise specify a time limit for accumulating the required number of signatures.

For the foregoing reasons, it is clear from the record and the face of the pleadings that Appellants' mandamus petition never stated a claim for which relief could be granted with respect to TIF Referendum Petition 3020–98, inasmuch as the pleading failed to allege that the original Referendum Petition contained a sufficient number of signatures timely filed, and there is no dispute that the number of signatures was substantially less than required. Accordingly, the motion to dismiss as to Count III was properly granted. Point I is denied.

(15) days after the notification of insufficiency has been mailed by the City Clerk, by filing a supplementary petition executed as provided in the case of an original petition. The City Clerk shall, within five (5) days after such amended petition is filed, make an examination thereof and if the amended petition is then found to be sufficient, shall so certify to the Council at its next regular meeting. If the

petition is still insufficient, he shall file his certification to that effect to the Council at its next regular meeting and no further action shall be had on such insufficient petition, and a copy of such certification shall be mailed to the person filing the petition. The finding of insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.

### C. TIF Charter Amendment Petition

#### (1) The Proposed "2/3 Voter Approval" Amendment

■ Respondents' motions to dismiss also argued that Appellants' proposed "two-thirds voter approval" charter amendment, which would provide that the adoption of any TIF Redevelopment Plan or Project by the City require the approval of two-thirds (⅔) of the Hazelwood voters at a duly conducted municipal election, conflicted with section 99.835.3 of the TIF Act and thus was void under Article VI, § 19(a) of the Missouri Constitution.[10] The trial court agreed and dismissed this portion of Appellants' mandamus on that basis, specifically finding that "the proposed ⅔ [voter approval] requirement runs afoul of Sec. 99.835 RSMo. The Legislature has concluded, as a matter of policy, that the subject of the proposed referendum is inappropriate." In their second and third points on appeal, Appellants claim that this finding was error because: (1) it violates a general rule of law prohibiting pre-election judicial review of the substantive legality of initiative or referendum proposals; and (2) the alleged illegality of the proposal in this case is not so clear or self-evident as to constitute an exception to the general rule.

Contrary to Respondents' arguments and the outdated cases on which they mainly rely, Appellants are correct in their statement of the rule; modern precedents leave no doubt that Missouri courts indeed recognize and follow a general rule against pre-election judicial review concerning the substantive legality of ballot measures. The underlying rationale for the rule is that because the election might result in the proposed measure being voted down, there normally is no justiciable controversy ripe for adjudication, unless and until the measure is approved and becomes law. See *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498, 500 (Mo. banc 1997); *Craighead v. City of Jefferson*, 898 S.W.2d 543, 546–47 (Mo. banc 1995); *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990); *State of Missouri ex rel. Gateway Green Alliance v. Welch*, 23 S.W.3d 861, 863 (Mo.App. E.D.2000).

■ However, our reading of the cases leads us to conclude that there are at least two recognized exceptions to the general rule. First, courts may make a threshold determination of whether the proposed measure is administrative rather than legislative in character, since only legislative measures are appropriate for the initiative process. *Gateway Green Alliance*, 23 S.W.3d at 863. Second, our Supreme Court has indicated that pre-election review is permissible in cases where the measure is clearly facially unconstitutional. The Court has stated:

> Prior to the presentation of an initiative to the people, courts may consider only procedural or ballot issues having a bearing upon the integrity of the election itself. "Our single function is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827. A writ of prohibition may be issued on substantive grounds only **if the issue of law raised is "so clear or settled as to constitute matters of form."** *Craighead*, 898 S.W.2d at 545.

*Trotter v. Cirtin*, 941 S.W.2d at 500 (emphasis added).

The above-quoted excerpt from *Trotter* unmistakably suggests that, at least in some instances, issues of substantive legality can be "so clear or settled" as to effectively be tantamount to mere "matters of

---

**10.** The motions also argued that the Charter Amendment Petition and Amended Charter Amendment Petition were improper as to form under the requirements of sections 115.700 and 115.019. This contention has no merit. The record reveals that the Petitions substantially complied with applicable provisions regarding form.

form." In this regard, we note that the Court has also expressly stated that it has "the discretion to assess the constitutionality of initiatives in mandamus actions" prior to an election on the proposed measure, and that although a court's discretion to reach such substantive questions generally should not be exercised because to do so would "sacrifice the democratic process to the interest of judicial economy," nevertheless, such pre-election judicial review is appropriate when the proposed measure "is unconstitutional on its face." (emphasis added) *State ex rel. Dahl v. Lange*, 661 S.W.2d 7, 8 (Mo. banc 1983). We conclude, therefore, that such pre-election judicial review is both permissible and appropriate in cases where the proposed ballot measure is clearly facially unconstitutional.[11]

This is such a case. Appellants' proposed measure would require a two-thirds majority referendum vote of approval by the Hazelwood voters, as a necessary condition precedent to the City's adopting any future TIF Redevelopment Plan or Project. Section 99.835.3, which deals with TIF obligations, states in pertinent part:

3. Obligations issued pursuant to sections 99.800 to 99.865 may be issued in one or more series bearing interest at such rate or rates as the issuing body of the municipality shall determine by ordinance or resolution. * * * * No referendum approval of the electors shall be required as a condition to the issuance of obligations pursuant to sections 99.800 to 99.865.

At the same time, Article VI, § 19(a) of the Missouri Constitution provides that charter cities:

[S]hall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, pro-

vided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

A charter provision that conflicts with a state statute violates Article VI, § 19(a) and is void. *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo. banc 1996). The test is whether the charter "permits what the statute prohibits" or "prohibits what the statute permits." *Id.* Thus, if Appellants' proposed charter amendment requiring a referendum and two-thirds voter approval for the adoption of any future TIF Redevelopment Project or Plan by the City of Hazelwood conflicts with § 99.835.3 RSMo, it would be unconstitutional under Article VI, § 19(a).

In addressing the conflict issue in this case, the parties, in their respective briefs, focus almost entirely on the issue of whether the "no-referendum" language of section 99.835.3 prohibits all TIF-related referenda, or whether instead it prohibits only referenda strictly related to the issuance of TIF obligations. Respondents vigorously argue that the TIF Act is a detailed and comprehensive act; that the adoption and approval of a TIF plan or project and the later adoption and approval of the TIF obligations to fund the plan are essentially "inseparable;" that it would be "incongruous" to suppose that the Legislature could have intended to prohibit referenda on the issuance of TIF obligations but yet to allow referenda on the establishment of a TIF Plan or Project in the first place; and hence that it is "unreasonable and simplistic" to construe the statutory referendum prohibition as applying only to the issuance of TIF obligations.

11. In reaching this conclusion, we are fully aware of the following pronouncement from our recent decision in the *Gateway Green Alliance* case: "Although courts may not consider the constitutionality of a legislative initiative measure prior to the measure being placed on the ballot, an initiative petition may be scrutinized pre-election for the purpose of deter-

mining whether the measure proposes legislative, as opposed to administrative, action." *State ex rel. Gateway Green Alliance v. Welch*, 23 S.W.3d at 863. (emphasis added) The italicized portion of this quoted excerpt from *Gateway Green*, however, is dictum, and thus not precedential. See *Martinez v. State*, 24 S.W.3d 10, 16 (Mo.App. E.D.2000).

Appellants, on the other hand, argue with equal vigor that the adoption and approval of a TIF project or plan is an act separate and distinct from the later issuance of TIF obligations under section 99.835.3 and is governed exclusively by section 99.820; that nowhere in section 99.820 are referenda prohibited; that it is common for legislatures to permit referenda on substantive measures but not on their related tax or financing measures;[12] that the TIF Act does not contain any "generally applicable" prohibitions against any and all TIF-related local referenda; and finally that the referendum prohibition contained in section 99.835.3 applies "solely to referendum votes relating to the issuance of TIF obligations" and "not to the adoption and approval of a TIF project" itself—which, they assert, is "the sole focus" of their proposed ⅔ voter approval charter amendment. Thus, Appellants argue, the "purported conflict" which the trial court found between their charter amendment proposal and section 99.835 is either non-existent or, at least, "not so clear and self-evident" as to warrant an exception to the general rule prohibiting pre-election judicial review of an initiative proposal's substantive legality.

However, we do not have to decide the difficult question whether the "no-referendum" language of section 99.835.3 applies only to measures directly related to the issuance of TIF obligations or whether it instead has a broader application; this case can be resolved on a narrower basis than that. For there is one crucial dispositive fact that is determinative in this matter: the language of the proposed charter amendment contains an insuperably fatal flaw. Despite Appellants' repeated assertions that the proposed amendment applies "only" to the adoption of TIF plans or projects and not to the "issuance of TIF obligations," scrutiny of its actual language reveals otherwise. The amendment provides for the addition of a new paragraph to the enumerated powers of the Hazelwood City Council. As proposed, the new power would read:

To adopt and approve redevelopment plans, redevelopment projects, redevelopment project areas, and Tax Increment Financing as defined in Sections 99.800–99.865 R.S.Mo (The Real Property Tax Increment Allocation Redevelopment Act) only if at a duly conducted City election two-thirds of the voters voting on the proposition vote in favor of the proposed redevelopment plan, redevelopment project, redevelopment project area **or tax increment financing measure.** (emphasis added)

As the emphasized language makes plain, by requiring a referendum vote on every "tax increment financing measure," the proposed charter amendment patently contravenes section 99.835.3. It requires precisely what the statute prohibits. It thus violates Article VI, § 19(a) of the Missouri Constitution. Appellants—to their credit—candidly concede this problem in their reply brief. They nevertheless argue:

There is uncertainty about how or why the reference to tax increment financing was included.... Whether it was the work of an untutored drafter, or the result of simple confusion, it has not been the purpose of Appellants to propose that such measures be subject to referenda. The fact that this specific language is inconsistent with the Missouri Constitution, however, means only that it is subject to be severed from the remaining portion of the otherwise valid initiative. The rest of the provision can and should remain in full force, pursuant to Article XII, section 15 of the Hazelwood Charter, which provides: "If any provision of this Charter be held to be unconstitutional or void, the validity, force or effect of any other provision shall not thereby be affected." The Charter amendment proposed by Appel-

---

12. See, Annotation: *Construction and Application of Constitutional or Statutory Provisions Expressly Excepting Certain Laws From Referendum,* 100 A.L.R.2d 314 (1965).

lants is concerned only with adoption and approval of TIF projects. The simple remedy for the language inconsistent with that otherwise valid objective is severance after the charter has been amended.

Although creative, Appellants' "severability" argument is not convincing. Aside from many other serious difficulties, the argument overlooks the fact that it is impossible for this Court to say what the framers of the amendment intended when they drafted it, or what the signers of the Charter Amendment Petition intended when they signed it, with respect to whether they considered the unconstitutional language to be essential to the efficacy of the amendment. See *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d at 832. The proposed ⅔ voter approval charter amendment as worded is clearly facially unconstitutional. The trial court did not err in so holding, and accordingly in denying mandamus relief. *State ex rel. Dahl v. Lange*, 661 S.W.2d at 8. Appellants' second and third points on appeal are denied.

### (2) The Proposed "Eminent Domain" Amendment

 Appellants' other proposed charter amendment, concerning eminent domain, is likewise in clear conflict with the TIF Act and hence unconstitutional under Article VI, § 19(a). Section 99.820.1(3) of the TIF Act expressly grants cities the right to acquire property by eminent domain in connection with TIF projects. The proposed charter amendment would completely abrogate Hazelwood's power of eminent domain incident to any TIF proceeding. It thus would take away the right granted in the statute, by prohibiting Hazelwood from utilizing eminent domain in any TIF project.

Appellants argue that no real conflict exists between the statute and their proposed amendment, however, because the statute provides that a municipality *"may "* acquire property by eminent domain pur-

suant to a TIF plan (emphasis added), and under the proposed amendment the City of Hazelwood would merely be choosing not to exercise discretionary authority. They assert that "municipalities are allowed to use eminent domain in connection with TIF projects, but they are not *required* to do so." (emphasis in original) Thus, they contend, if the City of Hazelwood decides as a result of a referendum not to use eminent domain in connection with TIF matters, there is nothing that bars it from doing so. Further, they argue: "In a real sense," the proposed charter amendment "would not strip the City of power conferred by the State, especially because the city could at any time decide to amend or repeal [the charter amendment] and automatically reassert its authority to use eminent domain."

This argument is fundamentally flawed. First, while it of course is true that under the statute municipalities are allowed to use eminent domain in connection with TIF matters but not required to do so, it is also true that under the statute they are required to be allowed to choose whether to use eminent domain in a TIF plan. Under the proposed charter amendment, however, the City would no longer legally be allowed to exercise eminent domain power in connection with any TIF plan, because the City Charter would absolutely prohibit it in all cases. Second, we are not convinced that the proposed amendment "would not strip the City of the power" merely because the City might at some later time choose to repeal the amendment, and thereby "automatically reassert its authority." The Charter is the City's "organic law" and constitution. *State ex rel. Childress v. Anderson*, 865 S.W.2d at 387. Thus, the City would be stripped of any TIF eminent domain power under the proposed charter amendment, as long as that amendment remained in effect. We hold that this would be in clear conflict with the TIF Act and hence with Article VI, § 19(a) of the Missouri Constitution. Accordingly, the trial court did not err in

dismissing that portion of Appellants' mandamus petition.

### D. Motions For Intervention

In their final point on appeal, Appellants challenge the trial court's order allowing Tristar and the RPA Intervenors to intervene. In view of our holding that the trial court correctly sustained Respondent Klos's motion to dismiss, we need not decide this issue.

The judgment is affirmed.

ROBERT G. DOWD, Jr., P.J. and MARY RHODES RUSSELL, J., concur.