# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
November 1, 2012 Session

## STATE OF TENNESSEE v. KYTO SIHAPANYA

**Appeal from the Circuit Court for Fayette County**
**No. 12-CR-15    J. Weber McCraw, Judge**

**No. W2012-00716-CCA-R3-CD  - Filed November 8, 2013**

The Defendant, Kyto Sihapanya, pleaded guilty to leaving the scene of an accident involving death, a Class E felony, and following too closely, a Class C misdemeanor.  See T.C.A.§§ 55-10-101, 55-8-124 (2010).  The trial court sentenced the Defendant as a Range I, standard offender to two years' confinement.  On appeal, the Defendant contends that the trial court erred (1) by denying judicial diversion, (2) by denying probation, and (3) by sentencing him to two years.  We conclude that the trial court properly denied judicial diversion and sentenced the Petitioner to two years but that the court erred by denying probation.  We reverse the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed;
Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined.  ROGER A. PAGE, J., filed a concurring and dissenting opinion.

James W. Curry, Memphis, Tennessee, for the appellant, Kyto Sihapanya.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Matthew B. Hooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a motor vehicle accident that resulted in the death of Naomi Harris.  According to the State's recitation of the facts at the guilty plea hearing on March 8, 2012,

Mr. Sihapanya on August 13th of last year was traveling on Interstate 40 and rear-ended another vehicle. That vehicle was driven by Ms. Naomi Harris. Ms. Harris's vehicle went off the roadway into the median between the eastbound and westbound lanes, actually went partially into the opposing traffic and then came back into the grassy median area and turned sideways and then started to flip and ended . . . upside down after it had flipped a number of times. Mr. Sihapanya continued . . . westbound and left Fayette County, went into Shelby County. There were people who had seen this occur and who called in a description of the vehicle involved and Mr. Sihapanya . . . was arrested or stopped in Shelby County approximately 20 minutes - 20, 25 minutes after the crash occurred. Ms. Naomi Harris died as a result of her injuries in this crash.

When he was found in Shelby County, officers . . . escorted him back to the scene . . . and proceeded to investigate the accident. . . . The THP CIRT team determined that the accident was Mr. Sihapanya's fault, that he did rear end her but they were not able to determine exact speeds . . . involved and we expect to put on additional proof about some additional behavior that the State would allege is . . . reckless at a sentencing hearing. . . .

At the sentencing hearing, the presentence report was received as an exhibit. The report stated that the Defendant had no criminal history before the instant offenses but that he pleaded guilty to speeding on January 31, 2012, approximately five months after the crash. The report showed that the Defendant was attending Southwest Tennessee Community College and studying to become a firefighter. The report did not show mental or physical health problems. The Defendant had worked part time with his father for two to three years installing carpet while attending school.

Obadiah Smith, the victim's brother, testified that on the morning of the accident, he received a telephone call from his brother, who told him that the victim was in a car accident and had died. He said he told his mother about the victim's death. He said it was a "major loss" for his family. He said he could not "question whether the [D]efendant was a good person or was a good human being. . . . [H]e made a bad decision, a bad choice, because . . . he was probably drinking a little bit and maybe he fell asleep at the wheel. . . ." He said the victim was his mother's only daughter.

William Williams, Jr., testified that he was the victim's fiancé and that they had dated for fourteen years. He said the victim's cousin told him about the victim's death. He said the victim was driving to work at the time of the crash. He said the victim was a nurse, worked for hospitals, and loved her work. He said that before the victim left for work, they made plans to go to the movies that night. He said that the victim was a good person and did

whatever she could for others and that he was lonely without her. He did not understand why the Defendant did not stop after hitting the victim's car.

Courtney Stampley testified that at the time of the victim's death, he and the victim's daughter, Dominique Harris, were engaged. He said that although they were scheduled to marry on September 25, 2011, they postponed their wedding until February 25, 2012. He said that the victim's death impacted his wife and their marriage greatly. He said a part of his wife "left" when the victim died. He said that the victim's death was a tragic loss and that he wished he had more time to get to know her.

Yolanda Whitmore, the victim's first cousin, testified that the Tennessee Highway Patrol (THP) contacted her the morning of the accident and that she contacted the remainder of the family. She said the victim was a loving person and was like a sister to her. She said the victim's mother, who was more like a mother to her, could not bring herself to say that the victim was dead. She said that it was a "devastating loss" and that the victim was not able to see her daughter get married. She said that a two-year sentence was inadequate and that there were "no words to describe" how the family felt. She said that she was sorry for the Defendant's family but that his family was able to see him.

Dominique Harris Stampley, the victim's daughter, testified that her mother's death changed her life and that she would never be the same. She said that the Defendant's mother was alive and that the Defendant's life continued. She said that although she accepted the Defendant's apology, she said it did not come from the heart. She said the Defendant was only sorry because he was caught leaving the scene.

The Defendant testified that he was twenty-one years old, that he lived with his parents, and that he worked with his father installing carpet while attending Southwest Tennessee Community College. He said he had worked with his father for about six years. He said his family immigrated from Laos when he was seven years old.

The Defendant testified that the night before the accident, he left Memphis at 7:30 p.m. and arrived in Nashville at 10:30 p.m. to meet friends from church camp, whom he had not seen for some time. He said they watched television, talked, and ate pizza. He said he drank three beers and a portion of a fourth. He said that he left Nashville around 2:00 a.m. and that he did not feel impaired. He said that when he began driving to Memphis, it had been one hour since his last beer. He admitted he was twenty years old at the time of the accident.

The Defendant testified that he drank water and ate sunflower seeds to stay awake during the drive to Memphis but that he began to doze off around 6:30 a.m. He stated that he rear-ended the victim's car, that the victim's car swerved off the road and into the median, and that he did not stop because he panicked and was nervous and scared. He said he was "just stupid, selfish, didn't think it through. . . ." He feared disappointing his family, who did not want him to make the trip. He said this was the first accident in which he was involved. He denied that he saw the victim's car flip and that his car left the road.

The Defendant testified that the THP stopped his car, that he was taken to the scene, and that he performed field sobriety tests at the scene. He denied being impaired when he left Nashville and agreed he was not charged with driving under the influence or vehicular homicide. He denied that his drinking caused the accident. He said he was saddened and shocked when the officer told him the victim died as a result of her injuries. He said that if he had the opportunity to do things differently, he would have stopped his car, called 9-1-1, and helped the victim. He accepted responsibility for the accident.

The Defendant testified that the victim's family members' testimony hurt, that he could only imagine their pain, and that he dealt with it daily. He said that he could not sleep after the accident because he thought about it "over and over." He said the accident taught him not to drink and drive and to think before acting. He said he had not consumed alcohol since the accident and denied drinking frequently before the accident.

The Defendant testified that he had not been charged with a crime before the accident. He denied using illegal drugs and agreed to submit to a drug test. He said he attended Pursuit of God Church and was an usher periodically. He said he, his sister, and his parents were close. He said his long-term goal was to graduate from college and become a firefighter. He denied having mental or physical health problems.

The Defendant testified that he would comply with any probation requirements the court believed necessary and that he was willing to speak to young students about the dangers of driving when tired. He addressed the victim's family and said he was "very sorry . . . for what [he] did." He said he was young, stupid, and selfish. He said that if his mother had died, he would want the person responsible to "pay the price, too."

On cross-examination, the Defendant testified that he knew he rear-ended the victim's car and that he did not look in his rearview mirror as he drove away. He said he participated in a "ride-on" with an ambulance after the accident and learned EMT techniques. He said he worked all day installing carpet before he left for Nashville and denied sleeping while in Nashville. He said that had the police not stopped his car, he would have gone home. He agreed nobody would have ever known he was involved in the crash.

-4-

The Defendant testified that he was at the scene for about one hour and that a blood sample was taken around 9:12 a.m., which showed a 0.02 blood alcohol content. He agreed that he had alcohol in his blood seven hours after he left Nashville. He agreed the blood alcohol content would have been higher three hours earlier at the time of the accident. He said he was certain he did not drink more than four beers. He agreed he was under the legal age to drink alcohol at the time of the accident and denied leaving the scene because he feared being arrested for driving under the influence. He said he began to feel sleepy before he entered Fayette County and agreed alcohol caused drowsiness. He agreed it was possible the beers could have made him sleepier than he otherwise would have been.

Ricky Feelam testified that he owned Cordova Carpet Company and that the Defendant and his father had installed carpet for his business for seven or eight years. He said the Defendant was an excellent employee who never caused problems. He said the Defendant was punctual and worked six days per week. He denied having to discipline the Defendant for any reason. He said the Defendant had never done anything dishonest or been accused of stealing from a customer's residence. He said the Defendant had never shown any signs of alcohol or drug addiction. He said that since the accident, the Defendant was quieter, concerned, and remorseful.

Phetsamone Phoummabomg, the Defendant's cousin, testified that the Defendant was a good person and that she did not understand why he did not stop after the accident. She said the Defendant wanted to be a firefighter because he wanted to save lives. She said the Defendant helped his parents around the house, worked with his father during the day, went to night school, and attended church regularly. She said the Defendant spent time with his family on the weekends and tried to stay out of trouble. She had never known the Defendant to be dishonest or have a drug or alcohol addiction. She said that after the accident, the Defendant became withdrawn, moody, and quiet. She said the Defendant did not socialize with his friends anymore. She said the Defendant was remorseful.

Mithouphone Sihapanya, the Defendant's uncle, testified that the Defendant was a friendly person and that they were close. He said that after the accident, the Defendant became withdrawn and quiet and that the Defendant was remorseful for not stopping after the accident. He said the Defendant's failing to stop after the accident surprised him because the Defendant was a responsible person and was taught to help others.

Denina Joy Henderson testified that she was a manager at Valentino's Hair Signature Salon and that the Defendant and her daughter dated during high school. She said the Defendant spent a lot of time at her home during that time. She thought highly of the Defendant and said he was a helpful person and cared for others. She said that the Defendant was always respectful to her and her daughter and that she respected the Defendant.

Upon this evidence, the trial court denied judicial diversion. The court found nothing in the record to suggest the Defendant was not amenable to correction. With regard to the circumstances of the offense, the court found that this case began as a traffic accident but that the accident became a crime when the Defendant failed to stop at the scene. The court stated that had the Defendant stopped, called 9-1-1, or returned to the scene on his own accord, something might have been done to save the victim's life. The court found that the Defendant wanted to be a firefighter before the accident and that the Defendant should have realized that he needed to help the victim. The court said the circumstances of the offense were "very substantial" in denying diversion.

The trial court found that the Defendant had no criminal history, a good social history, and good physical and mental health. The court stated that the deterrence value weighed heavily against granting judicial diversion. The court stated that it needed to deter others from leaving the scene of an accident and to encourage drivers to "try to make a bad thing better." The court found that granting diversion would not deter the Defendant or others and might encourage others to leave accident scenes. The court stated that it wanted to send a message to the community and to the Defendant that this type of behavior would not be tolerated. With regard to whether diversion served the interests of the Defendant and the public, the court acknowledged the Defendant pleaded guilty to an offense that was eligible for diversion. The court, though, stated that it did not understand how granting diversion would serve the public interest. The court noted that diversion would serve the Defendant's interest but found that the circumstances of the offense, the needed deterrence value, and the public interest outweighed granting judicial diversion.

In determining the appropriate sentence, the trial court considered the evidence at the guilty plea and sentencing hearings, the presentence report, the victim impact statements, and the principles of sentencing. In relying on the nature of the offense and the conduct of the Defendant, the court sentenced the Defendant as a Range I, standard offender to two years' confinement. Although the Defendant was not charged with an alcohol-related offense, the court found that alcohol impacted the Defendant's decision to continue driving. The court found that statutory enhancement factor (10) applied. See T.C.A. § 40-35-114 (10) (2010) ("The defendant had no hesitation about committing a crime when the risk to human life was high."). The court weighed heavily the Defendant's continuing to drive and his failure to stop his car voluntarily. The court stated that the Defendant knew the risk to human life was high because he saw the victim's car leave the roadway at a high rate of speed.

With regard to alternative sentencing, the trial court weighed heavily the nature of the offense and the Defendant's conduct. The court noted that had the Defendant stopped, the victim might have survived but that because he did not stop, nobody knew if the victim would have survived. The court noted the Defendant probably would have been successful

on probation and might have been rehabilitated. The court was not concerned about society being at risk from the Defendant's future criminal conduct. The court, though, concluded that probation would "unduly depreciate the seriousness of this offense." The court also found that it needed to deter others in the community who are involved in accidents from leaving accident scenes and to ensure drivers will verify the safety of others. This appeal followed.

## I

The Defendant contends that the trial court erred by denying his request for judicial diversion. He argues that the court abused its discretion by relying on the circumstances of the offense and the need for deterrence to deny diversion. The State responds that although the Defendant was eligible for judicial diversion, the trial court properly denied diversion. We agree with the State.

A defendant is eligible for judicial diversion if he or she is found guilty of or pleads guilty or nolo contendere to a Class C, D, or E felony or a lesser crime, has not previously been convicted of a felony or a Class A misdemeanor, and is not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(I) (2010). The decision to grant judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse of discretion. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Upon review, we will give the trial court the benefit of its discretion if "'any substantial evidence to support the refusal' exists in the record." *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting *State v. Hammersley*, 650 S.W.2d 353, 356 (Tenn. 1983)).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. *Electroplating*, 990 S.W.2d at 229; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. Appellate review is precluded if the trial court fails to make findings in support of its determination regarding judicial diversion. *See State v. Kevin Spurling*, No. E2008-02599-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App. Feb. 8, 2010).

We conclude that the trial court did not abuse its discretion by denying judicial diversion. The Defendant relies on *State v. Dana Webb*, No. W2008-02815-CCA-R3-CD (Tenn. Crim. App. Feb. 5, 2010), to support his position that he is entitled to diversion. There, the trial court focused "almost exclusively" on the circumstances of the offense and the need for deterrence without considering the remaining *Electroplating* factors. *Id.*, slip op. at 9. This court concluded that while the nature of the offense and deterrence may be controlling factors in denying diversion, "they cannot be given controlling weight unless . . . they [necessarily] outweigh all other factors." *Id.* In the present case, the trial court considered all the appropriate factors and found that the circumstances of the offense, the need for deterrence, and the public interest outweighed the factors favoring judicial diversion. It did not rely on the nature of the offense and deterrence to the exclusion of the other appropriate factors.

Regarding the circumstances of the offense, the court focused on the notion that something might have been done to save the victim's life had the Defendant stopped at the scene, which is unsupported by the record. No evidence was presented showing whether the victim might have survived had the Defendant stopped at the scene. The evidence showed that the victim's car left the roadway and flipped multiple times. The Defendant's conduct satisfied the elements of the offense but nothing exists in the record suggesting his conduct was aggravated in such a way that justified denying diversion because the victim died. An accident involving a death is an element of the offense, and as a Class E felony, the offense is diversion eligible. Regarding the need to deter others and the public interest, the court wanted to send a message to the community and to the Defendant that this type of behavior would not be tolerated. The court did not understand how granting diversion would serve the public interest, although it conceded the Defendant pleaded guilty to an diversion eligible offense. Moreover, the court found, and we agree, that the Defendant was amenable to correction, had no previous criminal history, had a good social history, and had good physical and mental health.

We disagree that the nature of the offense, the need for deterrence, and the public interest, alone, support a denial of judicial diversion. We conclude, though, that the Defendant's pleading guilty to speeding five months after the crash but before he was sentenced in the present case supports the trial court's denial of judicial diversion. The Defendant's violating the rules of the road only five months after he left the scene of the accident resulting in the victim's death shows a lack of respect for the rules of the road and supports the trial court's denial of judicial diversion.

## II

The Defendant contends that the trial court erred by denying his request for probation. He argues that he was a favorable candidate for probation and that the trial court erred in denying his request based on the need for deterrence and the circumstances of the offense. The State contends that the trial court properly denied probation. We agree with the Defendant.

The Tennessee Supreme Court adopted the current standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 708. More recently, our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentences." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

Under the Criminal Sentencing Reform Act's 2005 revisions, a defendant is eligible for probation if the sentence imposed is ten years or less. *See* T.C.A. § 40-35-303(a) (2010); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). A defendant has "the burden of establishing suitability for probation." T.C.A. § 40-35-303(b); *see Carter*, 254 S.W.3d at 347. In order for a defendant to meet this burden, he or she must show that "probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" *State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citations omitted)). The Criminal Sentencing Reform Act of 1989 provides trial courts guidelines to aid their sentencing decisions. The Act's relevant portions related to alternative sentencing include the following:

> (5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing a failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

> (6)(A) A defendant who does not fall within the parameters of subdivision (5), and who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary; . . .

. . .

(6)(D) A court shall consider, but is not bound by, the advisory sentencing guideline[.]

T.C.A. § 40-35-102(5)-(6) (2010).

In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); *see Ashby*, 823 S.W.2d at 168; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Although these factors are also applicable in diversion and probation cases, they are more strictly applied to defendant's seeking judicial diversion because diversion does not result in a conviction. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). Although a defendant may not be suitable for judicial diversion, such a finding does not prevent a defendant's being suitable for probation. *See id.*

When determining if incarceration is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010); *see also Hooper*, 29 S.W.3d at 5.

Although we previously concluded that a sound basis existed for denying judicial diversion, we conclude that the trial court abused its discretion by denying probation. The court found that the Defendant probably would have been successful on probation and been

rehabilitated. Likewise, the court was not concerned about the community being at risk from the Defendant's future criminal conduct. Although the court relied on the nature of the offense and the Defendant's conduct in denying probation, we conclude that the court's reliance on the possibility that the victim might have survived had the Defendant stopped at the scene is unsupported by the record. No evidence was presented showing whether the victim might have survived had the Defendant stopped at the scene. With regard to depreciating the seriousness of the offense and the need for deterrence, the Defendant's conduct satisfied the elements of the offense but nothing exists in the record suggesting his conduct was aggravated in such a way that justified denying probation because the victim died. An accident involving a death is an element of the offense, and as a Class E felony, the offense is probation eligible. Noting that the factors used in determining whether to the grant diversion and probation are more strictly applied to defendants seeking diversion, we conclude that the record does not support a denial of probation.

### III

The Defendant contends that his sentence is excessive. He argues that the trial court misapplied the enhancement factor and asks that this court reduce his sentence to one year. The State responds that the trial court properly sentenced the Defendant to two years. We agree with the State.

In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; *see Ashby*, 823 S.W.2d at 168; *Moss*, 727 S.W.2d at 236.

As previously noted, challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d 68 at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.*

The Defendant contends that the trial court misapplied enhancement factor (10), which states that the Defendant had no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40-35-114(10) (2010). He argues that the applied factor is an essential element of leaving the scene of an accident involving a death. This court has concluded that although enhancement factor (10) is inherent in all homicide cases relative to a victim, a "trial court may consider this factor when the defendant endangers the lives of people other than the victim." *State v. Kelley*, 35 S.W.3d 471, 480 (Tenn. Crim. App. 2000); *see State v. Sims*, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995) (stating that enhancement factor (10) "may be applied in situations were individuals other than the victim are in the area and are subject to injury").

Although we agree with the Defendant that enhancement factor (10) was an essential element of the offense, other drivers were on the roadway at the time of the accident. The record shows that descriptions of the Defendant's car was given to the THP. Likewise, the Defendant drove after consuming alcohol, and although his blood alcohol concentration was only 0.02 three hours after the accident, the level would have been higher at the time of the accident. His decision to consume alcohol and drive without sleeping the previous night while other drivers were on the roadway shows a disregard for safety of others. We conclude that the trial court did not err in applying enhancement factor (10) and that the court did not abuse its discretion in sentencing the Defendant to two years.

In consideration of the foregoing and the record as a whole, we reverse the judgments of the trial court, grant the Defendant's request for probation, and remand the case for further proceedings consistent with this opinion.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-12-