IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 24, 2014 Session

**STATE OF TENNESSEE v. BURTON W. WEBB**

**Appeal from the Criminal Court for Hamilton County**
**No. 283234        Rebecca J. Stern, Judge**

**No. E2013-02107-CCA-R3-CD - Filed July 29, 2014**

The Defendant, Burton W. Webb, pleaded guilty to three counts of reckless aggravated assault, Class D felonies, two counts of vehicular assault, Class D felonies, and driving under the influence (DUI) second offense, a Class A misdemeanor. *See* T.C.A. §§ 39-13-102, 39-13-106, 55-10-401 (2010). The trial court merged the DUI conviction with the vehicular assault convictions and sentenced the Defendant as a Range I, standard offender to two years for each reckless aggravated assault conviction and to three years for each vehicular assault conviction. The court ordered consecutive service of the vehicular assault convictions, for an effective six-year sentence. On appeal, the Defendant contends that the trial court erred (1) by applying certain enhancement factors to the vehicular assault convictions, (2) by denying alternative sentencing, and (3) by ordering consecutive sentences. Although we conclude that the trial court erroneously applied two enhancement factors, the lengths and the manner of service of the sentences are proper. We also conclude that the trial court erred by failing to state its factual findings underlying its conclusion that consecutive sentences were warranted pursuant to *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). We remand the case in order for the court to state its factual findings on the record.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Jerry H. Summers (on appeal) and Benjamin McGowan (at the guilty plea and sentencing hearings and on appeal), Chattanooga, Tennessee, for the appellant, Burton W. Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and Kate Lavery, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Although the Defendant pleaded guilty to two counts of vehicular assault and to three counts of reckless aggravated assault, a transcript of the guilty plea hearing is not included in the appellate record. The record reflects, though, that the Defendant pleaded guilty with the understanding that the trial court would determine the length and the manner of service of his sentences. At the sentencing hearing, Stephanie Anders testified that she prepared the presentence report, which was received as an exhibit. The report shows that the Defendant had previous convictions for resisting a stop and frisk in 2007, driving with a suspended, canceled, or revoked license in 2007, and DUI in 2005.

Regarding the present offenses, the presentence report shows that the Defendant was released on bond on July 9, 2012, on the condition that he complete an intensive outpatient treatment program at "CADAS." The Defendant failed a drug screen and was placed in an in-patient treatment program. On October 3, 2012, the Defendant was permitted to enter a treatment program at English Mountain Recovery in Sevierville, Tennessee that was followed by six months at St. Paul Sober Living in St. Paul, Minnesota. Although he successfully completed the English Mountain Recovery program, on April 24, 2013, the Defendant was discharged from St. Paul Sober Living because of a "relapse on heroin, alcohol, and oxycodone." The Defendant failed to notify his attorney and the trial court of his unsuccessful attempt to complete the program. After the Defendant's discharge from the program was discovered during the presentence investigation, the trial court forfeited the Defendant's bond for failure to comply with the conditions of his pretrial release and issued a capias for his arrest. He was arrested on July 26, 2013, and held in confinement until the sentencing hearing on August 26, 2013.

The presentence report shows that the Defendant graduated from high school but did not complete college. He reported first drinking alcohol at age seventeen and first using heroin, oxycodone, and marijuana in his twenties. He said he stopped using oxycodone and marijuana in 2012 because "I had to - I didn't want to, but I had to - it was killing me." The Defendant reported entering a rehabilitation program in Newport Beach, California in 2003, but the information was unverified because the program was closed.

Although the Defendant reported successfully completing the program in Minnesota, Ms. Anders received a letter from the program director stating that the Defendant was asked to leave the program on April 24, 2013, for failing a drug screen. The Defendant admitted to the program director that he used opiates, which was his second relapse. On March 4, 2013, the Defendant admitted consuming alcohol to a staff member. On April 19, 2013, the Defendant admitted consuming alcohol to a staff member and was asked to leave the facility

but given until the end of the week to find other arrangements. On April 23, the Defendant was "high on oxycodone" and asked to leave the facility immediately.

The presentence report showed that the Defendant was employed at Paradise Car Wash from November 2012 to May 2013. Although the Defendant reported earning $8.00 per hour, employment records showed that he earned $7.25 per hour and that he was a "voluntary quit," which usually meant the person failed to show up for work. The Defendant also reported working at Montana Harvest as a cashier from 1995 to 1997 and quitting for an undisclosed reason. The Defendant reported working at various health food stores, performing HVAC work, and following the music band Phish on tour but provided no documentation.

On cross-examination, Ms. Anders testified that although the Defendant failed to comply with the terms of his pretrial release in the present case, she found no previous violations of probation.

Philip Boring testified that he was the victim of one of the vehicular assaults, which occurred on September 12, 2011. He said the accident occurred at 8:00 a.m. when he was taking his four children to school before going to work. He said that he was stopped at a traffic light, that he proceeded into the intersection when the light turned green, and that he saw the Defendant's car just before the impact. He said he turned his car toward the Defendant's car in an effort to direct the impact to his door instead of the rear door where his children were sitting in the back seat. He said the Defendant's car hit his car on the driver's side door, which caused the car to spin. He said that when his car stopped, it was facing the opposite direction.

Mr. Boring testified that his children were ages five, six, seven, and eight at the time of the accident. He said the children's mothers were deceased at the time of the accident. His son Alex was in the front passenger seat and only sustained a few scratches. His youngest son, who was sitting in the back seat, had a scar on his right cheek, which he assumed was caused by broken glass. He said his oldest son received a "real bad" bruise to his left elbow, although the doctors first thought the arm was broken. He said his daughter received the most severe injuries. He said she sustained a brain injury that was similar to an injury caused by shaken baby syndrome. He stated that she was paralyzed on her left side for approximately two months and that the doctors initially did not think she would survive. He said she was transferred to a rehabilitation center in Atlanta, Georgia for almost two months and continued rehabilitation for one year. He said she had to relearn to speak and walk because of the extended duration of the paralysis. He stated that at the time of the sentencing hearing, she was "functional" and that she was a straight A student. He said, though, she continued to have difficulty walking.

Mr. Boring testified that he suffered ten broken ribs, a punctured lung, a broken femur, and a fractured pelvis. He said he was hospitalized for one and one-half months and was confined to a wheelchair for an additional one and one-half months. He said he progressed to a walker and then a cane. He said he had to learn to walk again. He said he had a 16" to 18" scar on his leg where the doctor's inserted a metal rod. He said he underwent multiple surgeries, developed arthritis, and continued to have a lot of soreness.

Mr. Boring testified that he was unable to care for his children when he was hospitalized and that they were happy to see him when he returned home. He said his two oldest children were receiving counseling. He said that after the accident, he had to find another place to live because a third-floor apartment was not conducive to a wheelchair. He said his car was a total loss. He said that he paid $4000 for the car and that the insurance company paid him $3000. On cross-examination, Mr. Boring testified that the Defendant's insurance company paid him $100,000 for the personal injuries, which was the policy limit.

Chattanooga Police Officer Steve York testified that he arrived at the scene at 8:12 a.m. and that a man who was not involved in the accident told him the Defendant was involved in the accident and walking toward Krystal restaurant. He saw the Defendant walk with a limp, enter the restaurant, walk into the restroom, and lock the door. He said he knocked, identified himself, and asked the Defendant to step outside. He said the Defendant responded that he needed to use the restroom. He said that the Defendant was in the restroom "for an extended amount of time" and that he heard the toilet flush several times. He said that when he asked the Defendant why he flushed the toilet multiple times, the Defendant responded that he had to use the restroom. He escorted the Defendant to the scene. He said that the victims had been taken to the hospital when he returned. He learned during his investigation the Defendant's car "failed to stop for the red traffic light." On cross-examination, Officer York testified that although he believed the Defendant's conduct inside the restroom was suspicious, he agreed he did not find any evidence showing the Defendant engaged in wrongdoing.

Leah Webb, the Defendant's mother, testified that the Defendant was thirty-five years old and lived with her at the time of the accident. She agreed the Defendant had relationships with his father and his grandmother. She said that the Defendant would live with her if the trial court imposed probation. She said the Defendant would have his own room and would not have access to her car. She agreed the Defendant had a substance abuse problem and said she learned of his addiction when he entered the English Mountain rehabilitation program. She said that the Defendant did well there and that afterward, the Defendant did not have "continuing . . . substance abuse" problems.

Ms. Webb testified that she suspected but did not know for sure if the Defendant was using drugs at the time of the accident. She said that before the accident, the Defendant was not living with her and that she did not know about the Defendant's activities. She said that if the Defendant lived with her, he would live under her rules. She said the Defendant was looking for a job and studying to become an insurance agent when he was released on bond. She said that the Defendant received monthly income from a life insurance annuity but that she controlled the funds as a trustee. She thought the Defendant's father could provide support, too.

Ms. Webb testified that the Defendant called her to pick him up in Minnesota when he was discharged from the rehabilitation program. She denied the Defendant told her that he was discharged from the program and said she assumed the Defendant had completed the program. She agreed she was angry, disappointed, and frustrated with the Defendant. She said that if the Defendant received probation, she would give the probation officer full access to her house and would inform the probation officer if she thought the Defendant was using drugs.

On cross-examination, Ms. Webb clarified that the Defendant lived with her at the time of the accident and testified that she did not know the Defendant was using drugs. She said, though, she could now look at the Defendant's face and determine if he was using drugs. She said that although the Defendant was discharged from various rehabilitation programs, she could provide "more oversight" than the program staff because the last program provided little supervision. She agreed she could not be with the Defendant all the time. When asked if the Defendant was capable of rehabilitation, she said the Defendant was "a good boy" who made bad choices. She said that the Defendant changed completely after he received a job with Liberty National Insurance and that he was excited and looked forward to the future. She said the Defendant began studying after he was discharged from the Minnesota rehabilitation program.

On redirect examination, Ms. Webb testified that public transportation stopped at the end of her road. She said the Defendant returned from Minnesota in May and was taken into custody in late July.

The Defendant addressed the trial court and stated,

First and foremost I just would like to apologize to Mr. Boring and his family. I'd like to say that I have a niece and nephew . . . [who] were around the same age. And I think about that daily. And it hurts me to think that I've troubled his family as much as I have. And I deserve to live with this pain and I am truthfully sorry. And I'm sorry. That's, you know, the bottom line. And I'd

-5-

like to also apologize to my family for the embarrassment that I've caused them. And I truly am trying to get my life in order. And that's all I have to say. Thank you.

The Defendant's Department of Safety driving record was received as an exhibit. The document showed that the Defendant was convicted of DUI in 2005, which involved an accident with property damage, driving on a revoked license reduced to not carrying a driver's license in 2007, and speeding involving an accident with personal injury in 2011.

The trial court found that statutory enhancement factors (1), (6), (10) applied to the vehicular assault convictions. *See* T.C.A. § 40-35-114(1) (2010) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"); -114(6) ("The personal injuries inflicted upon, or the amount of damage to property sustained by . . . the victim was particularly great[.]"); -114(10) ("The defendant had no hesitation about committing a crime when the risk to human life was high[.]"). In mitigation, the court found that the Defendant had good social ties and had made some efforts at rehabilitation, although not always successfully. *See id*. § 40-35-113(13) (2010) ("Any other fact consistent with the purposes of the Sentencing Act."). The court noted that it did not find "anything unusual about these circumstances." The court sentenced the Defendant as a Range I, standard offender to three years for each conviction.

Regarding the reckless aggravated assault convictions, the court found that enhancement factors (1) and (10) and the same mitigation applied. *See id*. § 40-35-114 (1), (10); -113(13). The court sentenced him as a Range I, standard offender to two years for each conviction. The court further found that confinement was necessary to avoid depreciating the seriousness of the offenses and to provide an effective deterrent to others likely to commit similar offenses.

The trial court ordered that the vehicular assault sentences be served consecutively and that the reckless aggravated assault sentences be served concurrently. The court found that the Defendant had been given "every opportunity at rehabilitation" and had failed to show amenability to rehabilitation. The court found consecutive sentences were justified because he was a dangerous offender whose behavior indicated little or no regard for human life and because he had no hesitation about committing a crime in which the risk to human life was high. *See id*. § 40-35-115(b)(4) (2010). The court found that consecutive service was reasonably related to the severity of the offenses committed and was necessary to protect society from the Defendant's further criminal acts. This appeal followed.

# I

The Defendant contends that the trial court erred by applying enhancement factors (6) and (10) to the vehicular assault convictions. He argues factor (6) was erroneously applied because serious bodily injury was an element of the offense and because insufficient evidence was presented regarding the amount of property damage. Regarding enhancement factor (10), he argues no evidence was presented showing that individuals other than those named in the indictment were placed at risk by the Defendant's conduct. The State responds that the trial court properly applied each factor.

The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Generally, challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.*

We note that although the trial court did not state on the record whether it applied enhancement factor (6) based on the personal injuries or the amount of property damage sustained by the victims, the State requested application of this factor based on the amount of property damage. The prosecutor told the court that the injuries sustained by the victims were "contemplated in the elements of the offense" but that it sought application of factor (6) based on the value of the car and Mr. Boring's having to find housing to accommodate his being in a wheelchair. The Defendant correctly states that in the context of personal injuries, this factor is not applicable to vehicular assault convictions because serious bodily

injury is an element of the offense. Factor (6) is not applicable in vehicular assault cases based on the personal injuries sustained by the victim. *See State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994); *see also State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995).

Application of factor (6), though, is permitted when based on the amount of property damage sustained by the victim. Mr. Boring testified that he paid $4000 for his car, that the car was a total loss, and that he received a $3000 payment from the insurance company for the value of the car. Although Mr. Boring testified that his injuries prevented him from living in his third-story apartment, we conclude that the loss of his apartment is not property damage as contemplated by factor (6). Likewise, we conclude that the amount of property damage regarding the victim's car was not particularly great and that the trial court erred by applying this factor.

Regarding enhancement factor (10), this court has concluded that a "trial court may consider this factor when the defendant endangers the lives of people other than the victim." *State v. Kelley*, 35 S.W.3d 471, 480 (Tenn. Crim. App. 2000); *see State v. Sims*, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995) (stating that enhancement factor (10) "may be applied in situations were individuals other than the victim are in the area and are subject to injury"). The Defendant argues no evidence was presented at the sentencing hearing regarding other drivers on the roadway. Although Officer York testified that he arrived at the scene of the accident at 8:12 a.m. and that a man who was not involved in the accident told him the Defendant was involved in the accident and walking toward Krystal, no evidence was presented showing the man was in the zone of danger at the time of the accident. Likewise, although the accident occurred around 8:00 a.m. on a weekday and counsel conceded the intersection in which the accident occurred "was probably busy," no evidence showed that other drivers were on the roadway at the time of the accident. We conclude that the evidence fails to support a conclusion that other drivers were on the roadway at the time of the accident or that other persons were in the zone of danger. We conclude that the trial court erred by applying factor (10).

Although we conclude that the trial court erred by applying enhancement factors (6) and (10), the misapplication of an enhancement factor does not invalidate the Defendant's sentences. *See Bise*, 380 S.W.3d at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.* The record reflects that the court considered the purposes and principles of the Sentencing Act and the appropriate evidence at the sentencing hearing and that the court properly applied the remaining enhancement and mitigating factors. We note the court's proper application of enhancement factor (1) and the Defendant's criminal driving history, which included DUI involving an accident with property damage, driving on a revoked license reduced to not carrying a

driver's license, and speeding involving an accident with personal injury. Further, the nature of the offense supports the length of the sentences. The Defendant chose to drive his car while under the influence of an intoxicant and struck the victim's car injuring Mr. Boring and his four children. We note the significant injuries sustained by Mr. Boring and his daughter. After the accident, the Defendant chose to leave the scene. He entered a nearby restaurant, used the restroom, and flushed the toilet multiple times. We conclude that the court did not abuse its discretion in imposing the sentences. The Defendant is not entitled to relief on this basis.

## II

The Defendant contends the trial court erred by relying on deterrence and depreciating the seriousness of the offense in denying alternative sentencing. The State responds that the trial court properly denied alternative sentencing. We agree with the State.

A defendant is eligible for probation if the sentence imposed is ten years or less. *See* T.C.A. § 40-35-303(a) (2010); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). A defendant has "the burden of establishing suitability for probation." T.C.A. § 40-35-303(b); *see Carter*, 254 S.W.3d at 347. In order for a defendant to meet this burden, he or she must show that "probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" *State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citations omitted)).

Our supreme court has concluded that the abuse of discretion with a presumption of correctness standard in *Bise* applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). When determining if incarceration is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2010); *see also State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000).

The record reflects the trial court found that probation was not appropriate based on the need to prevent depreciating the seriousness of the offenses and to deter others from committing similar offenses. The Defendant apologized for his conduct and the injuries he caused the victims, and the record reflects the Defendant's conduct was the result of his acknowledged drug addiction. Although the Defendant attempted to complete various drug rehabilitation programs during his pretrial release, he was discharged for failing drug screens and failed to report the discharge to counsel and to the court. His behavior indicates he failed to appreciate the seriousness of his conduct and his inability to rehabilitate himself. The Defendant chose to drive under the influence of drugs, resulting in an accident that caused significant injuries to Mr. Boring and his daughter. We note Mr. Boring's punctured lung and fractured pelvis and his daughter's paralysis and long-term rehabilitation to learn to speak and walk again. We conclude that the trial court did not abuse its discretion and that he is not entitled to relief on this basis.

### III

The Defendant contends that the trial court erred by ordering consecutive service of his vehicular assault sentences. He argues the court made "conclusory" findings without specificity regarding its decision to impose consecutive sentences and requests this court remand the case to the trial court for it to "specify the grounds" upon which consecutive sentences were imposed. The State responds that the trial court's ordering consecutive sentences is supported by the record.

Our supreme court recently concluded that the appropriate standard of review for all sentencing decisions, including the determination to impose consecutive sentences, is an abuse of discretion with a presumption of reasonableness. *State v. James Allen Pollard*, — S.W.3d —, —, No. M2011-00332-SC-CD, slip op. at 9, 14 (Tenn. Dec. 20, 2013). Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b)(4) (2010), which states, in pertinent part, that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant "is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."

Our supreme court has concluded that when the imposition of consecutive sentences is based on the trial court's finding the defendant to be a dangerous offender, the court must

also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." *Wilkerson*, 905 S.W.2d at 939; *see State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). The abuse of discretion with a presumption of reasonableness standard does not eliminate a trial court's obligation to comply with *Wilkerson*. *James Allen Pollard*, — S.W.3d at —, slip op. at 13. When a trial court fails to comply with *Wilkerson*, the appellate courts many conduct a de novo review of the record to "determine whether there is an adequate basis for imposing consecutive sentences" or "remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentencing." *Id.*, — S.W.3d at —, slip op. at 14 (citing *Bise*, 380 S.W.3d at 705 & n.41).

The record reflects that the trial court imposed consecutive sentences on the basis that the Defendant was a dangerous offender whose actions indicated little or no regard for human life and that the Defendant had no hesitation in committing a crime in which the risk to human life was high. The court, likewise, found that consecutive sentences were "necessary to protect the public against further criminal conduct by the defendant" and "reasonably relate[d] to the severity of the offenses committed." *See Wilkerson*, 905 S.W.2d at 939. Although the court made the appropriate conclusions pursuant to *Wilkerson*, the court failed to state its factual findings underlying its conclusion that consecutive sentences were warranted pursuant to *Wilkerson*.

In *James Allen Pollard*, the trial court failed to discuss the need to protect the public and how consecutive sentences reasonably related to the severity of the offenses. Our supreme court upheld this court's remanding for a new sentencing hearing "because the considerations required under *Wilkerson* involve a fact-intensive inquiry" and concluded that "the better course is to remand to the trial court for consideration of the *Wilkerson* requirements in determining the propriety of consecutive sentencing." *James Allen Pollard*, — S.W.3d at —, slip op. at 14. In light of our supreme court's conclusions in *James Allen Pollard*, we conclude that the trial court erred by failing to state on the record the facts underlying its conclusion that consecutive sentences were needed to protect the public and reasonably related to the severity of the offenses pursuant to *Wilkerson*. We remand the case in order for the court to state on the record its findings underlying its conclusion that consecutive sentences were warranted pursuant to *Wilkerson*.

Although we conclude that the trial court erroneously applied two enhancement factors, the lengths and manner of service of the Defendant's sentences are proper. We also conclude that the trial court erred by failing to state on the record the facts underlying its

conclusion that consecutive sentences were warranted pursuant to *Wilkerson*. We remand the case in order for the court to make its findings on the record.

_____

JOSEPH M. TIPTON, PRESIDING JUDGE