

# Missouri Court of Appeals

## Southern District

### Division Two

ELEVATION ENTERPRISES, LLC, )
)
      Plaintiff-Respondent, )
)
    v. )      No. SD37129
)
CITY OF SPRINGFIELD, MISSOURI, )    **Filed: June 8, 2022**
et al., )
)
      Defendants-Respondents, )
)
GALLOWAY VILLAGE )
NEIGHBORHOOD ASSOCIATION, et al. )
)
      Intervenors-Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable David C. Jones, Judge

### AFFIRMED IN PART, REVERSED IN PART WITH INSTRUCTIONS

### Introduction

This appeal involves the rezoning of certain real property within the Galloway Village neighborhood (the "Property") sought by the Property's owner Respondent Elevation Enterprises, LLC ("Elevation") and granted by Respondent City of Springfield, Missouri (the "City"), through General Ordinance No. 6614 ("Ordinance 6614"). Ordinance 6614 was passed by the Council of the City of Springfield (the "City Council") on September 21, 2020, subject to the power of referendum, all pursuant to the processes and procedures set forth in the Springfield

1

City Charter (the "City Charter") and Missouri statutes. Subsequently, on October 19, 2020, Appellants Galloway Village Neighborhood Association (the "Association") and several property owners in the Galloway Village neighborhood who own property located within 185 feet to 1600 feet of the Property (collectively, "Appellants") filed a referendum petition (the "Referendum Petition"), which was certified by the Clerk of the City (the "City Clerk") to the City Council on November 16, 2020. On November 30, 2020, the City Council reconsidered whether to repeal Ordinance 6614 (the City Council did not repeal it). On December 14, 2020, the City Council called a special election to place Ordinance 6614 on the August 3, 2021 ballot to be considered by the City's electors pursuant to the power of referendum.

On January 2, 2021, and before the election could occur, Elevation filed suit against the City, the City Clerk, the Mayor of the City, and members of the City Council (collectively, the "City Respondents") seeking, among other things, to permanently enjoin the election. Appellants sought and were permitted to intervene in the lawsuit and opposed the relief sought by Elevation. The City took the position that the law supported Elevation's request for injunctive relief. The key facts largely were undisputed (with the exception of Elevation's claims of irreparable harm and no adequate remedy at law), and Elevation, the City Respondents, and Appellants entered into a joint stipulation of facts three days before trial was to begin on May 17, 2021. In the stipulation, all parties agreed "that the following facts are true and unconverted":

> . . . .
>
> 7. Elevation filed an application for a change in the zoning of the Property with the planning and zoning commission for the City.
>
> 8. Pursuant to Section 11.17 of the City Charter and Section 36-367 of the Springfield City Code, the planning and zoning commission for the City of Springfield held a public hearing on or about July 16, 2020 and voted to recommend

2

City Council approve Elevation's application to change the zoning of the Property to Planned Development No. 374. . . .

9. After the commission's review and recommendation, Council Bill No. 2020-187 was prepared for consideration by City Council.

10. On or about July 20 and July 27, 2020, the City received protest petitions concerning Council Bill No. 2020-187 from certain Intervenors. The City then required a two-thirds majority vote of City Council for approval of Council Bill No. 2020-187. . . .

11. Council Bill No. 2020-187 was introduced to City Council on August 10, 2020, and a public hearing was held on August 10, 2020, and further public hearing was held on August 24, 2020. . . .

12. On or about September 21, 2020, Council Bill No. 2020-187, as amended, was enacted by City Council as General Ordinance No. 6614 ("Ordinance 6614"). Ordinance 6614 went into effect on September 21, 2020. . . .

13. On October 19, 2020, a referendum petition was filed with the City Clerk (the "Referendum Petition"). . . .[1]

14. On November 16, 2020, the City Clerk certified that the Referendum Petition was signed by a sufficient number of qualified electors and it was submitted to City Council for consideration.

15. On December 14, 2020, per requirements of City Charter Section 14.7, City Council considered in Council Bill No. 2020-291 whether to repeal Ordinance 6614 and voted not to repeal Ordinance 6614 by a vote of 7-2. . . .

16. Also, on December 14, 2020, per requirements of City Charter Section 14.7, because City Council had failed to repeal Ordinance 6614, it called a special election in Special Ordinance 27441 to submit Ordinance 6614 to a public vote at the August 3, 2021 election. . . .

17. Pursuant to Sections 14.7 and 14.8 of the City Charter, the City of Springfield, the City Clerk, and the City Council intend to put Ordinance 6614 to a ballot vote on August 3, 2021, unless ordered otherwise by this Court.

. . . .

---

[1] The Referendum Petition stated:

[W]e the undersigned citizens of the City of Springfield hereby petition to REPEAL Council Bill 2020-187 Amended, A general ordinance amending the Springfield Land Development Code, Section 36-306, 'Official zoning map and rules for interpretation,' by rezoning 4.2 acres of property . . . from R-SF, . . . GR, . . . and LB, . . . to Planned Development No. 374; and adopting an updated Official Zoning Map.

Following trial to the court, the trial court entered judgment on May 25, 2021 (the "Judgment"), permanently enjoining the election set for August 3, 2021. The Judgment included "findings of fact" and "opinion" that stated in relevant part:

### FINDINGS OF FACT

1. The Referendum Petition is not defective on its face.

2. City Ordinance 6614 became effective on September 21, 2020, and the property at issue in that ordinance (and this action) is currently zoned as "Planned Development 374."

. . . .

4. The Referendum Petition and Special Ordinance 27441, calling for a referendum election, seeks to repeal City Ordinance 6614 and, thus, amend the City's zoning regulations and restrictions that are currently in effect.

5. Procedurally, the referendum process outlined in Article XIV of the City of Springfield's City Charter, Special Ordinance 27441, and the Referendum Petition, as applied to City Ordinance 6614, conflict with Missouri state law, including but not limited to Mo. Rev. Stat. §§ 89.020, 89.030, 89.040, 89.050, and 89.060, in contravention of Mo. Const. art. VI, § 19(a), and are therefore void.

### OPINION

Ordinance 6614, as passed by the Springfield City Council ("City Council"), amends the zoning designation on the Property. The Referendum Petition was filed with the City Clerk seeking to repeal Ordinance 6614 and hold a ballot vote of the residents of the City, putatively in accordance with Article XIV of the City Charter. The referendum process provided by Article XIV of the City Charter, however, impermissibly conflicts with the procedure prescribed by Mo. Rev. Stat., Chapter 89, for the amendment of zoning regulations and restrictions, and is void as a matter of law.

. . . .

As it pertains to the Referendum Petition and Ordinance 6614, the City Charter permits that which Missouri state statutes forbid, including at a minimum, amendment of the City's zoning regulations and restrictions without public hearing. Accordingly, the City Charter's referendum process conflicts with State law, and is void by operation of Mo. Const. art. VI, § 19 (a).

4

. . . .

[The trial court then declared and ordered] (1) The procedure set forth in the City Charter for initiating the Referendum Petition, as applied to Ordinance 6614, impermissibly conflicts with the procedure set forth in Mo. Rev. Stat., Chapter 89, and is void by operation of Mo. Const. art. VI, § 19(a); and (2) The planned referendum election on the Referendum Petition cannot occur in compliance with State law or the Missouri constitution.

[The trial court further declared and ordered] that City Defendants and Intervenors . . . are hereby permanently enjoined from taking any further action on the Referendum Petition or Special Ordinance 27441, and any action to hold, conduct, or carry out a referendum election concerning City Ordinance 6614.

Appellants timely appealed the Judgment, and raise four points relied on. Appellants' third point claims the "trial court erred in permanently enjoining the scheduled election on Ordinance No. 6614" because any conflict between the power of referendum as applied to Ordinance 6614 and Chapter 89 of the Revised Statutes of Missouri was not "ripe for review until after the election." We believe Appellants' third point has merit and is dispositive of this appeal. As a result, we do not reach Appellants' other three points. Point relied on three is granted because the trial court erred when it permanently enjoined the election before the issue of an alleged conflict between the power of referendum and Chapter 89 was ripe for review. The trial court's judgment is affirmed in limited part, and reversed as to the issuance of an injunction permanently enjoining the referendum election.

**Analysis**

Standard of Review

The standard of review in this action for a declaratory judgment and injunctive relief is the same as in any court-tried case: the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Dohogne v. Counts*, 307 S.W.3d 660, 665-66 (Mo. App. 2010). . . . [C]laims that the circuit court erroneously declared and applied the law. . . . are reviewed *de novo*. *Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15, 26 (Mo. App. 2019). To the extent this Court's review involves the interpretation of statutes and

constitutional provisions, the Court construes the words used in those provisions according to their plain and ordinary meaning. *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 902 (Mo. banc 2006).

*Allsberry v. Flynn*, 628 S.W.3d 392, 395 (Mo. banc 2021).

<u>Generally Applicable Charter Provisions and Legal Principles</u>

The City is a charter city subject to the laws of Missouri, governed and controlled by its City Charter. As acknowledged by the trial court in the Judgment,

> "Municipal charters are adopted by a vote of the citizens of a municipality." ***State ex rel. Childress v. Anderson***, 865 S.W.2d 384, 387 (Mo. App. S.D. 1993); *see* Mo Const. art. VI, § 19. "Subject to the requirement that the charter be in harmony with and subject to the Constitution of Missouri and its laws in matters of general interest and statewide concern, the home rule charter is the city's organic law – its constitution." *Id.*; Mo. Const. art. VI, § 19(a).

The Missouri Constitution reflects a city's "broad authority to tailor a form of government that its citizens believe will best serve their interests." ***City of Springfield v. Goff***, 918 S.W.2d 786, 789 (Mo. banc 1996). "In construing city charter provisions, courts seek the intent of its drafters as gleaned from the language used." ***Skaggs v. City of Kansas City***, 264 S.W.3d 694, 698 (Mo. App. W.D. 2008) (internal quotations and citation omitted).

In this case, the will of the citizens of Springfield is set forth in the City Charter, and those citizens chose to tailor a form of government as they saw fit. The City Charter contains provisions related to zoning and rezoning of property, and the power of initiative, referendum, and recall. The following provisions of the City Charter are relevant to this Court's analysis on the issues before it in this appeal.

*City of Springfield Charter*

Section 2.12 of the City Charter provides in relevant part:

> In the transaction of legislative business, whenever the council shall act by ordinance, the following procedure shall be used: Every ordinance shall be by bill . . . .

6

. . . .

An ordinance, when passed by the council, shall be [signed and attested; immediately filed and thereafter preserved]; **and, except as otherwise provided herein, shall be subject to the referendum provided in Article XIV of this Charter. Unless otherwise specified, every ordinance shall become effective thirty (30) days after its final passage. If an ordinance be submitted at a referendum election or as a result of an initiative petition, it shall become effective upon the declaration by the council, after canvassing the election returns, that it has received the favorable vote of a majority of those voting thereon.**

(Emphasis added.)

Section 11.17 of the City Charter provides in relevant part:

. . . [The city planning and zoning commission] shall prepare and recommend to the council a comprehensive zoning ordinance, or propose amendments or revisions thereof, with such provisions as the commission shall deem necessary or desirable for the promotion of the health, safety, morals, and general welfare of the inhabitants of the city. . . . The commission shall hear applications for amendments, modifications or revisions of the zoning ordinance and shall forward such applications to the council with its recommendations thereon. The recommendations of the commission shall not be binding on the council, which may approve or disapprove the commission's findings; however, no general city plan, or zoning ordinance, or any modification, amendment or revisions thereof, shall be considered by the council unless the same shall have been first submitted to the commission for its examination and recommendation.

Article XIV of the City Charter pertains to Initiative, Referendum, and Recall.

Specifically, Section 14.2 states in part, as relevant to this case:

The electors shall have the power to approve or reject at the polls **any** ordinance passed by the council, or submitted by the council to a vote of the electors, excepting [designated ordinances that are not relevant to this case], such power being known as the referendum. Ordinances submitted to the council by initiative petitions and passed by the council shall be subject to the referendum in the same manner as other ordinances. Within thirty (30) days after the enactment by the council . . . of any ordinance which is subject to referendum, a petition signed by qualified electors of the City equal in number to at least ten percent of the total number of persons voting in the last general municipal election in April may be filed with the city clerk, requesting that such ordinance either be repealed or submitted to a vote of the electors.

(Emphasis added.)

Section 14.3 sets forth the requirements for a referendum petition including the "full title of the ordinance referred," each signer and the signer's place of residence, and a statement of circulator under oath that the circulator believes each signature is genuine, that each signer "to be a legal voter," and that "all signatures were affixed in his presence," and designating the circulator's residence. Sections 14.4 and 14.5 provide that "the city clerk shall determine whether each paper of the petition has a proper statement of circulator and whether the petition is signed by a sufficient number of qualified electors," and "shall certify the result [of the city clerk's examination of the petition] to the council at its next regular meeting."

Section 14.7 provides in relevant part:

> **When a referendum petition has been certified as sufficient, the ordinance specified in the petition shall not become effective, or, if it shall have gone into effect, further action thereunder shall be suspended until the ordinance referred has been approved by the electors . . . .** The council shall proceed forthwith to reconsider the referred ordinance, and its final vote upon such reconsideration shall be taken within thirty days after the certification and shall be upon the question: "Shall the ordinance specified in the referendum petition be repealed?"

> **If the council shall fail to repeal an ordinance specified in any referendum petition, it shall after its final vote thereon . . . [submit the referred ordinance] without alteration to the vote of the electors of the City [at a special or general municipal election].**

(Emphasis added.)

Section 14.9 – Effect of vote – provides in relevant part:

> If a majority of the electors voting on a proposed initiative ordinance or referred ordinance shall vote in favor thereof, it shall thereupon be an ordinance of the city and shall, unless otherwise specified, become effective as indicated in Section 2.12 of this Charter. . . . A referred ordinance which is not approved by a majority of the electors voting thereon shall thereupon be deemed repealed. . . .

> No election under the initiative or referendum procedure shall be set aside because of any defect in the petition.

8

By adopting the City Charter, the citizens reserved the power to initiate or reject ordinances at the polls. The City recognized and followed the City Charter provisions through the rezoning process initiated by Elevation's application for a change in the zoning of the Property, including the referendum process. The City fully intended to present Ordinance 6614 to a vote of the people as it determined Appellants had followed all proper procedures and the Referendum Petition was in proper form pursuant to the City Charter unless the trial court intervened enjoining the referendum election from taking place.

*Other Legal Principles*

Appellants argue that principles set forth in existing Supreme Court precedent involving the *initiative* process require that we grant their third point relied on because the same principles should apply to the power of *referendum*. If those same principles applied to the referendum process involving Ordinance 6614, the trial court's reasoning for enjoining the referendum election was not ripe for review. The issue would only be ripe for review after the election had in fact, occurred, and only if the voters rejected Ordinance 6614 at the polls. We agree that the principles applicable to the initiative process also should apply here.

In **State ex rel. Trotter v. Cirtin**, 941 S.W.2d 498 (Mo. banc 1997), neighboring landowners and a resident of Springfield requested "a writ of prohibition to stop the initiative process" to rezone thirty-seven acres at the northeast corner of U.S. Highway 65 and Battlefield Road in Springfield "midstream." *Id.* at 499. The trial court granted the writ, and the Supreme Court reversed and "remanded for the writ to be quashed and the case dismissed." *Id.* at 499-500, 501. In doing so, the Supreme Court stated:

> Courts are often called upon in attempts to derail initiative proceedings prior to a public vote. Because the election has not yet occurred, ripeness is almost always an issue. A dispute may arise only if the petition is passed. As was stated in *Local Union 1287 v. Kansas City Area Transportation Authority*:

9

It is premature to render a judgment or opinion on a situation that may never occur. A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose. The question presented must be ready for judicial decision. If it is not, the judgment is a nullity.

848 S.W.2d 462, 463 (Mo. banc 1993) (citations omitted). For this reason, courts do not address matters of substantive interpretation prior to the election. *See Pitman v. Drabelle*, 267 Mo. 78, 183 S.W. 1055, 1057 (1916). Where the "issue . . . is dependent upon . . . the outcome of an election not yet held . . . [w]e will not rush to review the possible legal effect of such matters. . . ." *Craighead v. City of Jefferson*, 898 S.W.2d 543, 547 (Mo. banc 1995). "Courts do not sit in judgment on the wisdom or folly of proposals. Neither will courts give advisory opinions as to whether a particular proposal would, if adopted, violate some superseding fundamental law. . . ." *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990).

Prior to presentation of an initiative to the people, courts may consider only procedural or ballot issues that have a bearing upon the integrity of the election itself. "Our single function is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827. . . .

**In this case, there is no irregularity raised as to the procedures that have occurred or as to the ballot title. The Springfield City Charter reserves to the people of Springfield the rights of initiative, referendum, and recall. No language in the charter expressly exempts zoning matters from these rights as in *State ex rel. Powers v. Donohue*, 368 S.W.2d 432 (Mo. banc 1963). In fact, the people of Springfield rejected such an exemption in an election held on April 5, 1994.**

**Relators claim that as a matter of substantive law, the more specific provisions of the Springfield Charter regarding zoning take precedence over the more general provisions of the charter regarding initiative petitions. Relators also claim that the notice, hearing, and protest provisions of Chapter 89 preempt the use of initiative proceedings regarding zoning. Neither the charter nor statute expressly mandates such a conclusion. Nor is there existing precedent from this Court that would do so. . . .**

*Id.* at 500-01 (emphasis added).

More recently, the Supreme Court reaffirmed these principles in ***Boeving v. Kander***, 496 S.W.3d 498 (Mo. banc 2016) (involving a constitutional amendment proposed by initiative petition) and ***City of Kansas City v. Kansas City Board of Election Commissioners***, 505 S.W.3d

10

795 (Mo. banc 2017) (involving an ordinance establishing a minimum wage for Kansas City that was proposed by initiative petition and not adopted by the city council). As explained in *City of Kansas City*, the Supreme Court also clarified the law stating:

> To support its argument that preelection substantive challenges are premature, the Committee relies upon *State ex rel. Dahl v. Lange*, 661 S.W.2d 7 (Mo. banc 1983). There, this Court refused to consider preelection constitutional challenges to the substance of a proposed amendment to a city charter because it "could effectively enjoin the amendment from being placed on the ballot because of conjecture that it would be found unconstitutional if passed and adopted by the voters." *Id*. at 8. In response, the City contends that substantive challenges to a ballot proposition can be litigated prior to the election if the substantive defect— here, the conflict with section 285.055—is clear on the face of the initiative proposal. *See Craighead v. City of Jefferson*, 898 S.W.2d 543, 545 (Mo. banc 1995) (Preelection substantive challenges are proper where the issue of law raised is "so clear or settled as to constitute matters of form.").
>
> In *Boeving*, however, this Court rejected the approach exemplified by *Craighead* and adopted a bright-line test prohibiting preelection challenges to what a ballot proposal would do, if approved by the voters. Instead, after *Boeving*, preelection challenges are limited to claims that the procedures for submitting a proposal to the voters were not followed. *Boeving*, 496 S.W.3d at 511 (quoting *Brown v. Carnahan*, 370 S.W.3d 637, 645 (Mo. banc 2012) ("[T]his Court [will not] issue an advisory opinion as to whether a particular proposal, if adopted, would violate a superseding law of this state or the United States Constitution.") (emphasis omitted), and *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 12 (Mo. banc 1981) ("[A]t no place in either the Missouri Constitution or in the implementing statutes is any court granted the power to enjoin an amendment from being placed on the ballot upon the ground that it would be unconstitutional if passed and adopted by the voters.")).

*Id.* at 505 S.W.3d at 798-99.[2]

Discussion

Appellants' third point asserts the "trial court erred in permanently enjoining the scheduled election on Ordinance No. 6614 and declaring City Charter provisions on referendum

---

[2] The Western District applied these general principles to a form of referendum in which the General Assembly delegated its legislative authority to the people by referring suggested legislation to the people for their approval or rejection in *Calzone v. Ashcroft*, 559 S.W.3d 32 (Mo. App. W.D. 2018).

11

in conflict with Chapter 89 of the Revised Missouri Statutes, because after finding no procedural defect in the Referendum Petition, no other issue was ripe for review until after the election . . . ."[3]

Elevation and the City Respondents argue that the legal principles set forth in *Trotter*, *Boeving*, and *City of Kansas City* are distinguishable and do not preclude pre-election review of an alleged conflict between the power of referendum as applied to Ordinance 6614 on the one hand and Chapter 89 of the Revised Statutes of Missouri (in particular, sections 89.060 and 89.050 requiring "public hearing and official notice" for "all changes or amendments" in zoning) and, as separately raised by the City Respondents, Section 11.17 of the City Charter (requiring review of proposed changes in zoning by the Planning and Zoning Commission before consideration by the City Council) on the other hand.[4]

Based on the legal reasoning set forth in *Trotter*, *Boeving*, and *City of Kansas City*, we agree with Appellants in that the issue of whether the City Charter provisions on referendum conflict with Chapter 89 of the Revised Missouri Statutes is not ripe for review until after the special election for the following reasons.

---

[3] Elevation and the City Respondents assert that Appellants' third point fails to comply with Rule 84.04(d), Missouri Court Rules (2022), in that the point fails to utilize (d)(1)'s mandatory formula and also is multifarious. To the extent these assertions are correct, Appellants' noncompliance does not impair our ability to understand the substance of the point and we exercise our discretion to review the point *ex gratia*.

[4] Elevation also appears to claim section 89.060 requires the referendum election "to be authorized by thirty-percent o[f] adjoining landowners," and the City Respondents appear to claim that the referendum election also violates section 89.060 because there is "no opportunity for protest petitions as required by 89.060." Neither claim is clearly articulated and we cannot determine if either claim is supported by the language of the statute.

12

*Alleged Conflict Is Not "Grounded Upon [the] Limits of Power to Hold the" Referendum Election, But Rather Relates to Whether the Electors' Rejection and the Resulting Deemed Repeal of Ordinance 6614 Would Violate a Superseding Law or Charter Provision*

Both Elevation and the City Respondents attempt to distinguish ***Trotter***, ***Boeving***, and ***City of Kansas City*** on the basis that the alleged conflict in this case between the power of referendum and Chapter 89 and, in the case of the City Respondents, Section 11.17 of the City Charter, relates to, as indicated in ***Trotter***, "whether the . . . limits of power, as expressed in the provisions relating to the procedure and form of" the Referendum Petition, "have been regarded,"[5] or, as stated in ***City of Kansas City***, "claims that the procedures for submitting a proposal to the voters were not followed."[6] Contrary to Respondents' arguments, we conclude the alleged conflict relates to whether the electors' rejection of Ordinance 6614 and the resulting deemed repeal of Ordinance 6614 would violate a superseding law or provision of the City Charter – i.e., Chapter 89 and Section 11.17 of the City Charter.[7] The trial court found that "[t]he Referendum Petition is not defective on its face," and neither Elevation nor the City

---

[5] ***Trotter***, 941 S.W.2d at 500.

[6] ***City of Kansas City***, 505 S.W.3d at 798.

[7] By its terms, the Referendum Petition stated it was a petition to repeal Ordinance 6614. In considering the Referendum Petition, the City Council also voted on the question whether Ordinance 6614 should be repealed. Special Ordinance 27441 and Section 14.7 of the Charter. However, under Section 14.7 of the Charter, the "ordinance specified in any referendum petition" "shall be submitted without alteration to the vote of the electors." *See also* Section 2.12 of the Charter ("If an ordinance be submitted at a referendum election . . . , it shall become effective upon the declaration by the council . . . that it has received the favorable vote of a majority of those voting thereon."); and Section 14.9 of the Charter ("If a majority of the electors voting on a proposed initiative ordinance or referred ordinance shall vote in favor thereof, it shall thereupon be an ordinance of the city[.]"). As a result, Special Ordinance 27441 provided the proposed ballot for the referendum election and submits the question to the electors as shall the City amend the official zoning map by rezoning the Property as stated in Ordinance 6614. A yes vote will approve Ordinance 6614, and a no vote will reject Ordinance 6614.

Respondents claim the procedures for submitting the Referendum Petition to the electors were not followed. Rather, Respondents' arguments are focused on what the electors' rejection and the resulting deemed repeal of Ordinance 6614 would or might do. *See City of Kansas City*, 505 S.W.3d at 798 ("In *Boeving*, however, this Court . . . adopted a bright-line test prohibiting preelection challenges to what a ballot proposal would do, if approved by the voters. Instead, after *Boeving*, preelection challenges are limited to claims that the procedures for submitting a proposal to the voters were not followed.").

In short, we see no principled distinction between an initiative petition where a substantive dispute may arise only if the petition is passed by the electors as in *Trotter*, *Boeving*, and *City of Kansas City*, and the Referendum Petition in this case where a substantive dispute may arise only if Ordinance 6614 is rejected by the electors and, as a result, deemed repealed. In both cases, the substantive dispute may never occur. As with initiative petitions where a substantive dispute may arise only if the petition is adopted, we should not sit in judgment on the wisdom or folly of Ordinance 6614, and should not give an advisory opinion on whether rejection by the electors and resulting deemed repeal of Ordinance 6614 would violate a superseding law or Section 11.17 of the City Charter. The proper course is to wait and see if the electors reject Ordinance 6614 before considering substantive challenges to the electors' rejection of the ordinance and to the resulting deemed repeal of the ordinance.

*Because Ordinance 6614 Remained Subject to the Referendum, the Fact that it Went Into Effect When Passed on September 21, 2020, Before that Process was Completed, Did Not Produce a Final Change in Zoning, and Does Not Support a Current Injury to Elevation or, if Ordinance 6614 Is Rejected by the Electors and Deemed Repealed, a "Rezoning" of the Property*

In attempting to distinguish *Trotter*, *Boeving*, and *City of Kansas City*, both Elevation and the City Respondents repeatedly point out that Ordinance 6614 went into effect on September 21, 2020, and produced an immediate change in zoning of the Property. However,

14

even accepting this conclusion as correct, any change effected was not *final* under the City Charter until the power of referendum expired or was completed with the electors approving Ordinance 6614 because *every* change in zoning is subject to the power of referendum from the beginning of the process.  Section 2.12 of the Charter provides, with exceptions not relevant in this appeal, that "An ordinance, when passed by the council, . . . shall be subject to the referendum provided in Article XIV of this Charter."  Again, with exceptions not relevant in this appeal, Section 14.2 of the Charter, provides "The electors shall have the power to approve or reject at the polls any ordinance passed by the council, . . . such power being known as the referendum."  In addition, under Section 14.7 of the Charter, when the Referendum Petition was "certified as sufficient," "further action [under Ordinance 6614] *shall be suspended* until [Ordinance 6614] has been approved by the electors[.]"  (Emphasis added.)  Finally, Section 14.9 of the Charter provides, "If a majority of the electors voting on a proposed initiative ordinance or referred ordinance shall vote in favor thereof, it shall thereupon be an ordinance of the city and shall, unless otherwise specified, become effective as indicated in Section 2.12 of this Charter. . . . A referred ordinance which is not approved by a majority of the electors voting thereon shall thereupon be deemed repealed."

*Any Nonfinal Change in Zoning Does Not Support a Current Injury to Elevation*

Elevation seizes upon this nonfinal change in zoning to advance an alternative argument, that Elevation "obtained the right to begin working on its planned development of the Property" when the City Council passed Ordinance 6614, and suffered current injury when the subsequent certification of the Referendum Petition "suspended" "further action" under the ordinance until the ordinance "has been approved by the electors."  This argument is flawed and the trial court's injunction cannot stand.

15

Any right Elevation obtained to begin work on the project after the City Council passed Ordinance 6614 was *always* subject to the power of referendum and contingent on the outcome of a referendum election in the event electors properly and timely exercised the power of referendum. Elevation's contingent right to begin development is inadequate to support a current injury in the period before the referendum election and does not support the existence of a controversy that is ripe for review. At its core, Elevation's complaint is that it is unfair that the City Charter allows for referendum on zoning ordinances since referendum petitions cause further delay in implementing nonfinal changes in zoning contingent on referendum. Simply said, Elevation does not want its success in obtaining a change in zoning from the City Council to be subject to the vote of the people. Elevation purchased the Property when it was not zoned for Elevation's intended development. A change in zoning was required, subject to referendum from the beginning of the rezoning process, before development could begin. Until Ordinance 6614 is rejected at a referendum election, Elevation's complaint represents only a legislative policy dispute rather than a justiciable controversy. Like in **Trotter**, Elevation simply seeks to "derail" the referendum proceedings before public vote.

### Any Nonfinal and Contingent Change in Zoning is Not a Rezoning of the Property if Ordinance 6614 Is Rejected by the Electors and Deemed Repealed

The City Respondents seize upon this nonfinal and contingent change in zoning to make an alternative argument - that rejection by the electors at the referendum election and resulting repeal of Ordinance 6614 would result in a "rezoning" of the Property without notice or public hearing under Chapter 89, or review by the City Planning and Zoning Commission under Section 11.17 of the City Charter.[8] This argument fails. The argument makes clear the conflict in

---

[8] Elevation also raises a somewhat similar argument in responding to Appellants' fourth point relied on.

16

question relates to what the rejection of Ordinance 6614 at the referendum election would or might do, and not to a claim the procedures for putting the Referendum Petition before the electors in the first instance were not followed. As a result, the alleged conflict is not ripe for review.

Appellants' third point relied on is granted.[9]

**Conclusion**

The trial court's judgment is affirmed solely as to the finding that "[t]he Referendum Petition is not defective on its face,"[10] but is reversed otherwise; the permanent injunction issued by the trial court is vacated; and the City Respondents are ordered to take all necessary steps to place Ordinance 6614 before the electors for a vote in accordance with the provisions of the City Charter.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, P.J. – CONCURS

GARY W. LYNCH, C.J. – CONCURS, AND WRITES SEPARATE CONCURRING OPINION

---

[9] We decline to discuss further our view of whether the electors' rejection of Ordinance 6614 at a referendum election and the resulting repeal of the ordinance would violate a superseding law or provision of the City Charter because to do so would be advisory only and prohibited.

[10] Appellants do not challenge this finding, and Elevation and the City Respondents did not appeal the Judgment.



## Missouri Court of Appeals
### Southern District
#### Division Two

ELEVATION ENTERPRISES, LLC, )
            )
       Plaintiff-Respondent, )
            )
    v. )
            ) No. SD37129
CITY OF SPRINGFIELD, MISSOURI, )
et al., ) FILED: June 8, 2022
            )
       Defendants-Respondents, )
            )
GALLOWAY VILLAGE )
NEIGHBORHOOD ASSOCIATION, et al. )
            )
       Intervenors-Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable David C. Jones, Judge

**CONCURRING OPINION**

I concur in the principal opinion, but write separately to address a cancerous anomaly at the heart of this litigation.

The City adopted Special Ordinance 27441 calling and setting the referendum election on Ordinance 6614, which Elevation seeks in this litigation to enjoin. Remarkably, however, rather than supporting in this litigation the legality of the election it called and set, the City takes the legal position that holding the election it set violates state law and for that reason the City should

1

be enjoined by the courts from holding the election. If that is the City's principled and sincerely-held legal position, rather than a disingenuous and duplicitous attempt to seek from the courts an end run around the referendum requirements in its own charter,[1] it should have not adopted Special Ordinance 27441 in the first instance or, upon its later determination that such an election violates state law, immediately repealed it. In the absence of such a repeal, I cannot reconcile the City's simultaneously asserted, but diametrically opposing, legal positions that are clearly and irrevocably inconsistent. For this reason, I would strike and refuse to address any arguments in the City's brief challenging its holding of the referendum election it called and set.

GARY W. LYNCH, C.J. – CONCURRING OPINION AUTHOR

---

[1] The City took a principled and direct approach by calling an election on April 5, 1994, to amend the city charter "'to provide that the zoning of property shall not be subject to the initiative or referendum process.'" ***State ex rel. Trotter v. Cirtin***, 941 S.W.2d 498, 499 (Mo. banc 1997). "Over seventy-five percent of those voting opposed the amendment." ***Id.***